FREDERICK LUTZ v. ANDRY FORBES.

The prescription applicable to an action for damages growing out of a fraud practiced in the sale of a horse affected with a contagious and incurable disease, which spread among and caused the death of other horses of the purchaser, is that of one year, under Article 3501 of the Civil Code.

The principal is responsible in damages for the act of his agent in selling a horse which he knew to be affected with a contagious and incurable disease that would be likely to be communicated to other stock belonging to the purchaser.

APPEAL from the District Court of the Parish of St. Landry, *Martel*, J. *J. H. & T. Overton*, for plaintiff. *Lewis and Porter*, for defendant and appellant.

COLE, J. This action was instituted to recover of the defendant, a horse-drover from the State of Missouri, damages to the amount of one thousand dollars, which plaintiff alleges he suffered in the fraudulent sale of a horse to him, which, though warranted sound, was, at and prior to the time of the sale, diseased with the glanders.

The prescription of two months and also of one year, is plead by defendant. Article 2513 of the Code, amended by the statute of 1828, p. 160, § 22, declares, that all suits for the redhibitory defects of animals, may be instituted within two months after the date of the sale thereof, any law to the contrary notwithstanding.

The limitation in the second clause of Article 2512 of the Code, does not apply to the redhibitory action for relative or absolute vices in animals.

This Article declares, " that the redhibitory action must be instituted within a year at the farthest, commencing from the date of the sale.

" This limitation does not apply where the seller had knowledge of the vice, and neglected to declare it to the purchaser."

Article 2512 applies the limitation to the redhibitory action which must be instituted within one year, and Article 2513, amended by the statute of 1828, fixes the prescription of the redhibition of animals within two months after the date of the sale thereof, any law to the contrary notwithstanding.

The prescription of two months does not apply to the case at bar, because the character stamped upon the action by the plaintiff in his pleadings determines the prescription applicable to it. *Wilson* v. *McGreal*, 12 A. 357.

This appears to be a suit to recover of the defendant damages growing out of an alleged fraud and imposition practiced towards the plaintiff by the agents or employees of the former in the sale of a horse to him, affected with a contagious and incurable disease, which spread among the stock of plaintiff and caused the death of seven or eight of his horses.

This action falls properly under that class of wrongs embraced in Articles 2294, 2295 and 2296 of the Code, under the head of Offences and Quasi-Offences, which declare that, " every act whatever of man, that causes damage to another, obliges him, by whose fault it happened, to repair it."

Every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill."

" We are responsible, not only for the damage occasioned by our own act, but
77

for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

The prescription applicable to this action is one year ; Art. 3501 of the Code provides that "The actions for injurious words, whether verbal or written, and that for damages caused by slaves or animals, or resulting from offences or quasi-offences, are prescribed by one year."

As this prescription has not been perfected, the action lies.

The liability of defendant shall now be considered.

Three, out of the four persons present at the sale, were the agents or employees of the defendant.

The evidence of the three has been taken by commission.

There are four circumstances which are urged by the defendant to free him from liability.

1. "That a draft was given by plaintiff for the horse on his merchant in the city, and was not paid, for a time, after its maturity, sufficient to have permitted the drawer to have countermanded its payment, on account of the diseased condition of the thing sold."

No presumption can be deduced from this, of the soundness of the animal, the draft was payable at sight, and plaintiff was never notified that it was not honored upon presentation. It was, then, natural to conclude, that the draft had been paid, and plaintiff may have thought it useless to write to his merchant on the subject.

2. "That the horse was sold for $112 50, and was apparently worth at least two hundred dollars."

This does not establish that the horse was sold as unsound.

*Ferguson*, who, as agent of defendant, was the vendor of the animal, testifies that, " it was stated to plaintiff at the time of the sale, that the reason why the horse was sold for such a low price was, that he was wild, ungaited, unused to work, and was sold as an unbroken horse."

" There was no peculiarity about the horse sold, that induced me to believe that he was diseased at the time he was sold, or previous thereto."

3. " That the three witnesses, agents of defendant, stopped at the gate of the house of plaintiff some weeks after the sale." It is not, however, established, that plaintiff, who was at some distance, recognized them, and it is not then strange, he did not at that time inform them of the sickness of the horse.

4. " That if the horse had been affected with the glanders, he would have been excluded from the drove of horses and mules, in coming from Missouri to Louisiana."

This would be an argument to show the good faith of the agents of defendant, if there were not so much doubt encompassing their testimony from its contradictory character that we cannot believe it.

One of defendant's witnesses testifies : Mr. *Ferguson* told plaintiff, that the horse was getting over the distemper, which caused him to run a little at the nose ; whilst *Keller*, a witness of plaintiff, says, he was present at the sale, and no allusion was made to any sickness whatever. *Ferguson* contradicts the witness of defendant, and corroborates the testimony of *Keller* for he says the horse was not affected with any disease.

The reason given by *Ferguson* for selling the horse so low, does not appear to be correct. The testimony of defendant's witnesses shows, that the horse had

been used in the plough in Missouri; that he was used as much as any other horse in the drove, in the journey from Missouri to Louisiana; and it is shown by *Keller*, that a day or two subsequent to the sale, he saw the horse in harness, as he was being driven by plaintiff in his own buggy, and he was very gentle.

The testimony of defendant shows that the horse had been affected with the distemper, but had become well before he was started in the drove; that just before the sale, he did run a little at the nose.

It is established, that the horse had the glanders, and died about five or six weeks after the purchase; and that plaintiff lost seven or eight horses of a disease having the same symptoms as those of the horse purchased of defendant.

We are of opinion that the agents of defendant who was absent at the sale, knew that the horse was diseased with the glanders. The principal is responsible for the acts of his agents under such circumstances.

His agents were aware at the time of the sale, that the glanders is a disease contagious and incurable; and that plaintiff would naturally allow.this horse to run with his other stock; and that thus, they would be exposed to catch the disease.

They were, therefore, aware of the damage to which plaintiff would be exposed by their fraudulent act, and defendant ought. to be held responsible for the same.

The lower court gave a judgment in favor of plaintiff for one thousand dollars. There is no error in the same.

Judgment affirmed, with costs of appeal.