**Calvin H. WEISER, Plaintiff,**

v.

**S. James SHWARTZ, III and Kohlmeyer & Company, Defendants.**

**Civ. A. No. 67–705.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 24, 1968.

will fluctuate" in good times and in bad is indeed what makes it a market. But a serious economic loss in a boom market is bound to make even the most philosophical investor profoundly unhappy. Having suffered such a catastrophe, Calvin H. Weiser here sued Kohlmeyer & Company, a stock broker and a member firm of various security and commodity exchanges, and its employee, S. James Shwartz, III, under Section 10(b) of Rule 10b–5 of the Securities Exchange Act of 1934.[1] Weiser alleges, *inter alia,* that Shwartz acted improperly in his handling of his account by engaging in "extensive trading and churning in securities disproportionate to the size of the account." Weiser seeks to recover from Shwartz and Kohlmeyer & Company for losses resulting from the alleged improper handling of his account.

The defendants filed a motion for summary judgment on the ground that the plaintiff's claim was barred by the one-year prescriptive period provided in Article 3536 of the Louisiana Civil Code. The Court denied the motion on the basis that there was a genuine dispute concerning the material facts, severed the issue of prescription, and ordered a hearing to determine whether the plaintiff's claim was barred because of his delay in asserting it.

Following the hearing, the defendants moved to dismiss the churning claim on the ground that it was barred because of plaintiff's delay. Having considered the evidence adduced at the hearing and the applicable law, the Court has concluded that defendants' motion should be denied.

---

M. Hepburn Many, New Orleans, La., for plaintiff.

Charles Kohlmeyer, Jr., New Orleans, La., for defendants.

RUBIN, District Judge:

Bernard Baruch's famous prediction about stock market behavior is the only one that has proved infallible. That "it

## I. THE EVIDENCE

The plaintiff is a sixty-eight year old resident of the City of New Orleans. Prior to 1956, he had never invested in the stock market. In 1956 he joined an investment club. Shwartz was a friend of the plaintiff, and Weiser got Shwartz to serve as adviser to the club. In 1958, plaintiff opened an account

1. 15 U.S.C.A. § 78a et seq.

with Kohlmeyer & Company, and Shwartz ultimately invested approximately $30,000 for the plaintiff. Weiser says that Shwartz promised to increase the capital in his account to $50,000 by 1966, the year in which Weiser intended to retire.

Shwartz continued to handle plaintiff's account until January, 1966. No trades were made in plaintiff's behalf after February 1, 1966.

During the period 1958–1966, plaintiff was furnished daily confirmation slips on each trade made in his account and monthly statements of his account. All of these were received more than one year before suit was filed on May 16, 1967.

Although the plaintiff was a member of the advisory committee of an insurance company and the advisory board of a local bank, the plaintiff's testimony reveals that he is an unsophisticated investor. For instance, although he testified that he thinks he first heard the word "churning" about 1956, in actuality he appears to have had little or no understanding of what that term meant until very recently. Similarly, although plaintiff testified that he thought he was making money on his investments the first two years after he opened his account with Kohlmeyer & Company, it is clear that he failed to consider the value of his non-liquidated holdings in relation to their cost in determining his true financial position. Moreover, his few personal selections of securities were uncannily poor. He purchased $7,000 worth of stock in the insurance company on whose advisory board he sits, but that

investment now has a value of approximately $25.00. And the only stock that he suggested that Shwartz buy for him likewise dropped in value.

Ultimately, when it became clear that his capital had fallen sharply, Weiser became dissatisfied and complained to Shwartz and Kohlmeyer & Company. In addition, he later spoke to four different lawyers about handling his claim. However, it was not until his present attorney had plaintiff's account audited—within a year before suit was filed—that Weiser had any evidence on which he could assert a claim that his account had been improperly handled other than the fact that he had lost money.

## II. THE LAW

The Exchange Act prescribes no period to limit the time within which private actions may be brought under Section 10(b) and hence under Rule 10b–5. In the absence of any express period in the federal statutes, the courts have uniformly held that the period provided by the state statute of limitations for fraud actions applies to actions brought under Section 10(b).[2]

The Louisiana prescriptive period of one year under Civil Code Article 3536 is applicable to actions for fraud[3] and therefore is the period to be applied here. However,

"It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating con-

2. E. g., Fratt v. Robinson, 9 Cir., 1953, 203 F.2d 627, 634–635, 37 A.L.R.2d 636; Tobacco and Allied Stocks, Inc. v. Transamerica Corp., D.Del., 1956, 143 F.Supp. 323, 327–328, aff'd without consideration of the issue, 3 Cir., 1957, 244 F.2d 902; Jennings and Marsh, Securities Regulation 779 (1963); 3 Loss, Securities Regulation 1774.

However, the application of state statutes of limitations to federally-created rights has been criticized as leading to diverse results and encouraging forum shopping. See Blume and George, Limitations and the Federal Courts, 49 Mich. L.Rev. 937, 992 (1951); Note, Federal Statutes Without Limitations Provisions, 53 Colum.L.Rev. 68 (1953).

3. Brown Shoe Co. v. Unter, La.App., 2 Cir., 1937, 173 So. 579; Thomas v. Whittington, 1911, 127 La. 551, 53 So. 860; Lutz v. Forbes, 1858, 13 La.Ann. 609; Johnson v. Mansfield Hardwood Lumber Company, W.D.La., 1958, 159 F.Supp. 104, 127 n. 13.

struction required by that doctrine." Holmberg v. Armbrecht, 1946, 327 U. S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743.

Moreover, there is no need to look to state law for anything but the period of time to be applied, "since only that portion of federal law is lacking." Note, 70 Harv.L.Rev. 566, 568 (1957). Hence, federal law controls as to when the one year period begins to run.[4]

The federal rule as to when the statute of limitations begins to run on a cause of action based on fraud is set out in Bailey v. Glover, 1875, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636. There the Supreme Court stated:

> "We * * * think that, in suits in equity, the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." 88 U.S. (21 Wall.) at 348.

The rule is equally applicable to actions at law. Bailey v. Glover, supra, at 349; Tobacco and Allied Stocks, Inc. v. Transamerica Corp., 3 Cir., 1957, 244 F. 2d 902, 903.

■ Defendants urge that plaintiff is barred here because plaintiff had knowledge more than one year before this suit was filed of all the trades made in his behalf by the defendants. They contend that such knowledge was sufficient to constitute the "discovery" required by Bailey v. Glover, supra, to commence the running of the statute of limitations for an action based on fraud. They rely on Tobacco and Allied Stocks, Inc. v. Transamerica Corp., D.Del., 1956, 143

F.Supp. 323, 329, aff'd, 3 Cir., 1957, 244 F.2d 902, in which the district court concluded that the federal rule laid down in Bailey v. Glover means that limitation "does not begin to run until *evidence* of fraud is discovered or could have been discovered had reasonable diligence been exercised, for whatever is notice calling for inquiry is notice of everything to which such might have led." (Emphasis supplied.) They also cite Goldenberg v. Bache & Co., 5 Cir., 1959, 270 F.2d 675, 681, in which the Fifth Circuit stated that the word "discovery" in the limitation period provided in the Exchange Act for actions based on broker/dealer fraud in the over-the-counter market means "either actual knowledge or notice of *facts* which, in the exercise of due diligence, would have led to actual knowledge of the violation." (Emphasis supplied.)

However, this case involves a claim for churning, and it is not self-evident, as the defendants suggest, that the statute began to run when the plaintiff knew of each trade; it is the volume of trading and the nature of the trading, considered in the light of the plaintiff's investment objectives, that constitute the legal wrong. In Hecht v. Harris, Upham & Co. et al., N.D.Calif., 1968, 283 F.Supp. 417 [January 22, 1968], the court dealt with a claim by a seventy-six year old widow that her account had been churned by her broker. The court found:

> "[A]lthough [plaintiff's] experience and competence were such that she knew her account was being actively traded by [the defendant] in both securities and commodities, contrary to her claimed instructions and her claimed needs and objectives, her comprehension of market operations and business affairs beyond that was so meagre that she still had to rely upon [the defendant] concerning whether

---

4. Janigan v. Taylor, 1 Cir., 1965, 344 F. 2d 781; Tobacco and Allied Stocks, Inc. v. Transamerica Corp., D.Del., 1956, 143 F.Supp. 323, 328–329, aff'd without consideration of the issue, 3 Cir., 1957, 244 F.2d 902. See generally 3 Loss, Securities Regulation 1775–1776.

trading in any particular volume or with any particular frequency was reasonably suitable or, on the contrary, whether it was excessive under the circumstances." 283 F.Supp. at 433. The court rejected the theory that supplying confirmation slips and monthly statements to the plaintiff was of itself sufficient to put her on notice that the volume of trading in her account was excessive. The court concluded:

> "[T]he information on hand to plaintiff at any one time, considered in the light of the limitations upon her competence, and the circumstances already reviewed, was not sufficient to put her on notice that the trading of her account was excessive—until she was so advised by her income tax accounts (sic) in March, 1964—the date we find to be the date of discovery so far as 'excessive' trading is concerned." 283 F.Supp. at 441.

In light of the facts developed at the evidentiary hearing held in this case, this Court cannot now conclude that plaintiff here was so much more sophisticated an investor than Mrs. Hecht as to justify concluding that the confirmation slips and statements furnished plaintiff by the defendants gave plaintiff information "sufficient to put [him] on notice that the trading of [his] account was excessive * * *." The information furnished plaintiff did not therefore provide him with "notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." Goldenberg v.

Bache & Co., supra, 270 F.2d at 681. As the district court in Tobacco and Allied Stocks, Inc. v. Transamerica Corp., supra, observed:

> "[T]he duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, * * * sophistication and expertise in the financial community, and knowledge of related proceedings." 143 F. Supp. at 331.

In the light of the circumstances of this case, the Court is of the view that the information plaintiff had prior to one year before this suit was instituted was not sufficient notice of facts that, in the exercise of due diligence as defined in *Transamerica*, would have led to actual knowledge of the violation.

Even if a purely objective standard of diligence is to be applied,[5] the information available to plaintiff more than one year before this suit was instituted was not sufficient to put the hypothetical "reasonable man" on inquiry to protect his rights insofar as the alleged churning was concerned. The facts available to plaintiff would put only a sophisticated investor on inquiry. In such situations, a plaintiff is peculiarly dependent on the professional knowledge and skill of his broker. Therefore, the motion to dismiss the claim for churning on the ground that it is barred by the statute of limitations is denied.

5. It is not clear from the opinion of the Third Circuit affirming the district court's determination in Tobacco and Allied Stocks, Inc. v. Transamerica Corp. whether the Third Circuit meant to reject the district court's conclusion that the duty of diligence is subjective. Compare the following language of the court:

"It is a rule of general application in fraud cases that the statute of limitations begins to run, or laches to attach, when the fraud is discovered by the plaintiff or when it could have been discovered *by him* with due diligence or care on his part." 244 F.2d at 903 (Emphasis supplied).

"It is sufficient if facts come to plaintiffs' attention that would warrant the inferences which *reasonable* men would draw, and that would put *reasonable* men on inquiry to protect their rights." 244 F.2d at 904 (Emphasis supplied).