**Biruta DZENITS, Plaintiff-Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and James A. Billington, Defendants-Appellees.**

**No. 73–1465.**

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 21, 1974.

Decided March 6, 1974.

R. Robert Huff, of Huff & Huff, Inc., Tulsa, Okl. (James R. Eagleton, Tulsa, Okl., on the brief), for plaintiff-appellant.

John S. Athens, Tulsa, Okl. (Russell H. Harbaugh, Jr., Tulsa, Okl., on the brief); for defendants-appellees.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an action which arises under § 17(a) of the Securities Act of 1933 and § 10(b) of the Securities Act of 1934, together with Rule 10b–5 issued by the Securities and Exchange Commission. The complaint also contains a claim under the Commodity Exchange Act of 1936 and Rule 405 of the New York Stock Exchange. The basic allegations are that the defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., together with James A. Billington, one of its agents, was guilty of so-called "churning" the account of plaintiff, whereby she suffered damages in the amount of $51,995.63. The period alleged to have been covered was from January 1, 1964 to February 1969. The trial court granted the defendants' motion for summary judgment on the ground that the statute of limitations had run.

The complaint herein was filed in the District Court on October 26, 1971. It alleged that an audit of the plaintiff's account was commenced in January 1971 and was completed on February 1, 1971. Defendants filed a motion to dismiss the complaint on December 16, 1971, stating that more than two years had elapsed, whereby the action was barred. Thereafter, on February 7, 1972, the court or-

dered a more definite statement, and on February 22, 1972, the court entered its order overruling defendants' motion to dismiss. Extensive discovery was carried on in 1972.

Finally, in December, the court called up for hearing the various discovery motions together with the defendants' motion for summary judgment. The trial court in ruling for the defendants on summary judgment stated that plaintiff knew in late 1966 that defendant Billington had failed to inform her of the situation respecting her securities, and that in late 1968 or early 1969 plaintiff became so dissatisfied that she switched her account from Merrill Lynch. Based on these circumstances, she was charged with knowledge of fraudulent activity on the part of the defendants, so that her action filed in October 1971 exceeded the applicable two-year statute of limitations.

On appeal the plaintiff advanced the following contentions:

1. That the court failed to recognize that the churning of an investment account is *per se* fraud.

2. That the court erred in holding that plaintiff was charged with knowledge from the time that Billington failed to inform her of the condition of her account or from the time she closed her account rather than from the time of discovery of the actual condition.

3. That the court erred in finding and concluding that the plaintiff was a sophisticated investor and doing so without hearing the evidence, thus making a finding of fact based upon parts of her deposition.

4. That the issue as to plaintiff's level of knowledge, intelligence and business judgment was plainly an issue of fact which should have been left to the jury.

The evidence before the court disclosed that plaintiff was a dentist, was born in Latvia and came to the United States after fleeing her native country during World War II. Plaintiff stated that she was lacking in business experience and education. Plaintiff's account with Merrill Lynch, Pierce, Fenner & Smith, Inc. was first opened in 1959, at which time she was 33 years of age. According to her testimony given in a deposition, she opened the account at Merrill Lynch on the suggestion of a dental patient. She, according to her testimony, believed that Merrill Lynch and Billington were experts and relied on their judgment. On their recommendation she opened a commodity account and allowed Merrill Lynch and Billington to purchase on margin. During the period in question there were 274 trading transactions involving over $3,600,000. According to further testimony presented in the trial court, there were two further purchases in excess of $70,000 each. Plaintiff maintains that she first heard the expression "churning" in December 1970 and first discussed the matter with her present attorney on December 24, 1970. She further asserted that only after an audit was performed on her former account on the advice of this attorney did she actually discover what had been going on, namely the churning of her account.

## I.

The courts generally recognize that "churning" in the context herein alleged constitutes fraud. It is a technical securities law term connoting excessive trading by a broker disproportionate to the size of the account involved, in order to generate commissions. Pierce v. Richard Ellis and Co., 62 Misc.2d 771, 310 N.Y.S.2d 266 (1970).[1]

1. The SEC has defined churning in a regulation. *See* 17 C.F.R. 240.15c 1–7(a), which reads:

The term "manipulative, deceptive, or other fraudulent device or contrivance", as used in section 15(c) of the act, is hereby defined to include any act of any broker or dealer designed to effect with or for any customer's account in respect to which such broker or dealer or his agent or employee is vested with any discretionary power any transactions of purchase or sale which are excessive in size or frequency in view of the financial resources and character of such account.

*See also* 80 Harv.Law Rev. 869 (1966).

While the gravaman of an allegation of churning is the existence of fraud, it refers to fraud in law. It is in the nature of constructive fraud in that it is considered a scheme under Rule 10b–5, the essence of which is deception of the customer and reliance of the customer on the integrity of the broker.[2]

A case which is often cited is Hecht v. Harris, Upham & Co., 430 F.2d 1202 (9th Cir. 1970). There also the plaintiff was of foreign birth. She was a school teacher who had taken employment as a tutor in the home of one Herman Hecht, whom she married after his wife died. Following the death of her husband, she commenced dealing in stocks. Through the years her account had risen from $2,000 to $533,000. At that time the account was transferred to Harris, Upham & Co. The numerous transactions (several thousand) which followed had a gross value of approximately 100 million dollars. Harris, Upham had commissions totaling $232,000. There was an overall loss of $12,000 on her account. The Ninth Circuit recognized that plaintiff had a valid claim. The court pointed out that even though she knew that her account was being actively traded, she nevertheless had to rely on the broker. The court emphasized that she had not had the experience to understand that the volume of the transactions might have been excessive.

Finally, the court concluded that the churning is not to be established by any single rule or formula; that it must be judged from a view of the volume and frequency of transactions.

Subsequently, the Seventh Circuit decided a similar case, that of Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir. 1969). Still another federal decision following the same line is Stevens v. Abbott, Proctor & Paine, 288 F.Supp. 836 (E.D.Va.

1968). *See also* Weiser v. Shwartz, 286 F.Supp. 389 (E.D.La.1968).

## II.

There is no dispute about the fact that the Oklahoma two-year statute applies. It is equally clear that the statute starts to run from the date of actual or constructive discovery of the fraud. *See, for example,* McFadden, Inc. v. Home Stake Production Company, 295 F.Supp. 587 (N.D.Okla.1968). *Cf.* de-Haas v. Empire Petroleum Company, 286 F.Supp. 809 (D.Colo.1968) (involving a Colorado statute of limitations).

## III.

A motion for summary judgment under Rule 56 is only appropriate when the moving party has established that there is no genuine issue as to any material fact and that he (or she) is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P. In assessing motions for summary judgment, both trial and appellate courts must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. James v. Atchison, Topeka and Santa Fe R. Co., 464 F.2d 173, 175 (10th Cir. 1972).

While cases involving defenses hinging upon applicable statutes of limitation frequently lend themselves to summary judgment proceedings, a court should not grant summary judgment for a defendant if there is a viable issue of fact as to when the limitations period began. 10 Wright and Miller § 2734, n. 31 at p. 651; 6 Moore § 56.17(58) at 2171–72 and cases cited at note 10. In the instant case, the crucial issue of fact with respect to the commencement of the running of the applicable two-year statute of limitations is when the plaintiff actually knew, or in the exercise of reasonable diligence should have known, of the existence of the alleged fraudulent

---

2. Churning differs from common law fraud in several respects. For example, proof of churning does not require proof of a specific or invidious intent to defraud. Hecht v. Harris, Upham, *supra*, at 1209. Secondly, whereas a complainant alleging common law fraud has the burden of proving the fraud by clear, cogent and convincing evidence, a complainant alleging fraudulent churning activity carries a less stringent burden of proof—one measured by the "preponderance of the evidence" standard. *See* Stevens v. Abbott, Proctor and Paine, 288 F.Supp. 836, 848 (E.D.Va.1968).

churning activity on the part of the defendants. Based upon a review of the evidence before the court at the time of granting the motion, it cannot be said that there existed requisite undisputed evidence that plaintiff had actual knowledge of the alleged churning activity. The important issue is then whether plaintiff or a person in plaintiff's position should reasonably have been apprised of the existence of fraudulent churning activity in the light of routine information she received concerning the active trading in her account.

■ This issue of constructive knowledge is also one of fact. Stevens v. Abbott, *supra,* and Hecht, *supra,* recognize that the issue as to whether the plaintiff in a case such as this is to be charged with knowledge is essentially one of fact subject to determination by the jury or by another trier of fact. It would seldom, if ever, be possible for a judge to determine summarily when the injured person in a case such as this became fully aware that he or she had been victimized. An appraisal of the full testimony is generally called for.

For example, because churning is conduct which is not common to the experience of the ordinary individual, it is consequently not easily recognizable to unsophisticated investors. Several courts have held that the mere receipt of confirmation slips recording the date of every security transaction does not in itself provide sufficient notice of churning activity to alert an investor otherwise unaware that the frequency and volume of such trading might be considered excessive. Hecht v. Harris, Upham, *supra*; Stevens v. Abbott, Proctor and Paine, *supra*; Weiser v. Shwartz, *supra.*

■ In each case, the degree of sophistication of the investor is, of course, important and it is a question of fact. The plaintiff in Weiser v. Shwartz, *supra,* was a member of the advisory committee of an insurance company as well as a member of the advisory committee of a local bank. Never-

theless, the court in that case determined that notwithstanding his business and financial background, the plaintiff was found to have been an "unsophisticated investor" since he had made poor investment decisions and had only a dim understanding of what the term "churning" meant at the time that the securities in his account were actively traded. At bar, plaintiff arguably had no understanding of the meaning of the term "churning" or of its possible existence with regard to her own account until after she had consulted an attorney. At the very least, the issue of plaintiff's knowledge was a question of fact to be determined from a consideration of the evidence.

■ Whether or not the plaintiff relied upon statements or reassurances made to her by Billington is also a question of fact which the court would have to resolve before determining that plaintiff had notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the fraudulent activity. Goldenberg v. Bache & Co., 270 F.2d 675 (5th Cir. 1959). In Stevens v. Abbott, Proctor and Paine, *supra,* the court held that by virtue of the broker's knowledge of plaintiff's lack of financial acumen there existed a fiduciary duty requiring him to exercise the highest degree of good faith in dealing with the plaintiff's account. 288 F.Supp. at 842, 847.

Counsel for appellees does not seriously dispute the factual nature of the questions raised. He is content, however, to counter that the plaintiff was negligent; that her failure to exercise ordinary diligence is sufficient to bar her in this case. He also argues that the plaintiff was unnaturally suspicious and that she would be inclined to make her own investigation since she had concluded some time before that Billington could not be trusted; that she transferred her account from Billington four years before filing the lawsuit and transferred her account from Merrill Lynch three years after closing the account. Merrill Lynch further claims

that the account was audited only following her decision to retain counsel.

All of the above is factual argument. At most it evidences that the plaintiff was entitled to a trial. Our careful reading of the plaintiff's depositions which were before the trial court at the time it granted summary judgment causes us to conclude that the question of plaintiff's actual knowledge of the alleged churning activity, or the factual underpinnings asserted by defendant upon which the court based its finding of constructive knowledge, cannot fairly be regarded as undisputed. The facts in question are equivocal at best, are clearly matters in dispute, and can only be deterined after full development before the fact-finder.

Where, as here, the issue is essentially a factual one, the case does not lend itself to disposition by summary judgment. It follows that summary judgment was improper and the cause must be reversed and remanded for a trial.

It is therefore ordered that the judgment be reversed and the cause be remanded for further proceedings.

Moore, Circuit Judge, concurred and dissented in part, with opinion.