STATE OF OHIO, Plaintiff,

v.

PETERSON, LOWRY, RALL, BARBER & ROSS, a partnership, Peterson, Ross, Rall, Barber & Seidel, a partnership, Timothy G. Lowry, Herbert C. Loth, Jr., Abe R. Peterson, Owen Rall, Henry P. C. W. Barber, Richard V. Henry, Jr., Gerhard E. Seidel, J. Hayden MacDonald, Elroy C. Sandquist, Jr., Irving G. Swenson, Robert G. Schloerb, Theodore J. Tsoumas, J. Robert Geiman, Thomas K. Peterson, John G. Campbell, Peter M. Sfikas, Robert S. Milnikel, Richard S. Borland, and Russell M. Pleton, Jr., Defendants.

Civ. A. No. 76–F–992.

United States District Court, D. Colorado.

June 18, 1979.

J. Vernon Patrick, Jr., Berkowitz, Lefkovits & Patrick, Birmingham, Ala., Harry J. Hobson, Miles M. Gersh, Luke J. Danielson, Holland & Hart, Denver, Colo., for plaintiff.

Donald M. Haskell, Mitchell A. Orpett, James J. Widland, Haskell & Perrin, Chicago, Ill., Raymond J. Connell, Yegge. Hall & Evans, Denver, Colo., Donald J. McLachlan, Robert H. Wheeler, John W. Treece, Isham, Lincoln & Beale, Chicago, Ill., Jeffrey A. Hyman, Denver, Colo., for defendants.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

SHERMAN G. FINESILVER, District Judge.

THIS MATTER, a securities case, is before the court on defendants' Motions to Dismiss, motions which we treat as Motions for Summary Judgment.[1] Defendants contend that the instant suit is untimely filed and hence barred by the applicable statute of limitations. Plaintiff, invoking the equitable tolling doctrine, asserts that its suit remains viable.

1. The motions are supported by affidavits and other matters outside the pleadings. Accordingly, pursuant to Fed.R.Civ.P. 12(b) and the mandate of *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir. 1978), this court has notified the litigants of the changed status of the motions and has provided them an opportunity to present all material made pertinent thereto. Order of December 6, 1978.

Upon plaintiff's request, we have allowed discovery to go forward on all issues relevant to the application of the statute of limitations. Order of February 8, 1979. Likewise, upon plaintiff's request, we have successively enlarged the time for filing affidavits so as to allow plaintiff the benefit of its discovery. Order of February 8, 1979; Order of April 4, 1979.

For reasons which follow, we grant defendants' motions and enter judgment for defendants.

## I

Plaintiff is the state of Ohio. Through its Treasurer, plaintiff purchased a $3,000,-000 promissory note on April 17, 1970 and a $5,000,000 promissory note on or about May 1, 1970. Both notes were issued by the King Resources Company ("KRC" hereinafter). Plaintiff alleges that there were securities violations in connection with the sale and purchase of those notes in 1970.

The defendants are a Chicago law firm, its successor in interest, and individual partners of the firm. The defendants were outside counsel for King Resources Company during the time in question. Plaintiff alleges that the statements, legal opinions, and representations of the defendant lawyers assisted King Resources Company and its accountants in materially overstating KRC's financial condition for the years ending December 31, 1968 and December 31, 1969. Plaintiff alleges that these defendants thereby violated provisions of federal and state law.[2]

The state of Ohio filed suit on April 17, 1972 against the King Resources Company, its accounting firm (Arthur Andersen & Company), a credit reporting firm (Dun & Bradstreet, Inc.), and several other named defendants, all with respect to the same transactions which underlie the instant lawsuit. *See, e.g., Ohio v. Crofters, Inc.,* 75 F.R.D. 12, 14–15 (D.Colo.1977); *see also,* Defendants' Exh. A(XII).

The state of Ohio did not file the instant suit, naming the law firms and the individual lawyers as defendants, until October 7, 1976. Plaintiff alleges in its complaint that

it did not become aware of the violative conduct of the defendant lawyers until 1976. Complaint, ¶ 34 (October 7, 1976); Amended Complaint, ¶ 34 (dated January 22, 1979 and accepted by this court's Order of February 8, 1979). In its amended complaint, the state of Ohio claims that the defendant lawyers fraudulently concealed their activities so that plaintiff, despite the exercise of due diligence, remained unaware of its claim against them until 1976, "the year next preceding the filing of this complaint."

On December 29, 1978, the defendants renewed their Motions to Dismiss, based upon the statute of limitations. The matter is now properly at issue (see note 1, *supra*), it has been fully briefed, and, on June 15, 1979, the matter was argued in open court. We are now prepared to issue our order granting defendants' motions.

## II

There are three related issues of law which are relevant to the application of the statute of limitations in the instant case. These issues involve: (a) the determination of the governing statute of limitations, (b) the working of the equitable tolling doctrine, and (c) the effect of fraudulent concealment on the running of the statute. We discuss each of the three issues, in turn.

## A

The governing statute of limitations is three years for each of the claims advanced by plaintiff.

The claims arise under § 17 of the 1933 Act, §§ 10(b) and 20 of the 1934 Act, and under the common law of the state of Colorado (see, note 2, *supra*).[3]

2. Plaintiff alleges violations of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976); § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976); § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t (1976); and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.-10b–5 (1978). (Though the operative events occurred in 1969 and 1970, we cite to the most current codifications as there have been no material changes in the interim).

Invoking principles of pendent jurisdiction, plaintiff also alleges common law fraud and negligent misrepresentation.

3. Based generally upon *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757 (D.Colo.1964), this court and other courts within this district have uniformly held that § 17 of the 1933 Act creates no private cause of action. *See, e.g., Nat'l Farmers Union Property and Casualty Co. v. Sterns Bros. & Co.,* 78–F–32 (D.Colo. Jan. 3,

With respect to the federal claims alleged here under the 1933 and 1934 Acts, the Congress has provided no statute of limitations.[4] Neither is there any federal statute of limitations for civil actions, generally. In this situation, the limitations period of the state in which the action is brought will be applied. We, thus, look to Colorado law.

Our starting point is Colo.Rev.Stat. § 13–80–106 (1973). That statute provides that "[a]ll actions upon a liability created by a federal statute . . . for which actions no period of limitations is provided in such statute, shall be commenced within two years *or the period specified for comparable actions arising under Colorado law, whichever is longer,* after the cause of action accrues." (emphasis added). We therefore begin with a presumptive two year limitations period and next inquire whether there is any other period specified for comparable actions arising under state law which may be longer than two years.

It would appear that there is, indeed, a comparable action arising under state law. Such an action is provided for in the Colorado Securities Act, Colo.Rev.Stat. §§ 11–51–101 through –129 (1973) and, specifically, in

§ 11–51–123. Section 11–51–123 is an enactment in Colorado of § 101 of the Uniform Securities Act. *See, People v. Terranova*, 563 P.2d 363, 365 (Colo.App.1976). This provision of the Uniform Act, and the Colorado enactment thereof, is substantially identical to the Securities and Exchange Commission's Rule 10b–5 and to § 17 of the Securities Act of 1933. *See,* 7A Uniform Laws Annotated (1978), p. 568 (Commissioners' Note).[5]

Since Rule 10b–5 and § 17 of the 1933 Act are at the heart of plaintiff's federal action, it is inescapable that Colo.Rev.Stat. § 11–51–123 is the corresponding and comparable action at state law. Section 11–51–123 is, in essence, identical to the federal provisions upon which plaintiff relies.

There is no specific limitations period attached to Colo.Rev.Stat. § 11–51–123.[6] We are, thus, compelled to look elsewhere in state law to find the applicable period. There are three other provisions of Colorado law which are of relevance. These relate to actions based upon fraud (Colo.Rev. Stat. § 13–80–109), upon implied or constructive fraud (Colo.Rev.Stat. § 13–80–

---

1979) (unpublished) and cases collected, *id.,* slip op. at p. 1.

Moreover, this court has consistently declined to exercise pendent jurisdiction over related state claims in cases arising under the federal securities laws. *See, e.g., Kerby v. Commodity Resources, Inc.,* 395 F.Supp. 786 (D.Colo.1975).

In the current posture of the instant case, however, we will not, sua sponte, strike any of plaintiff's claimed theories of recovery. For purposes of the instant motions only, we will consider each of plaintiff's alleged theories of recovery to be properly before the court.

4. In a civil action alleging fraudulent sale of securities in violation of § 17(a) of the 1933 Act, the period of limitations is *not* supplied by § 13 of the Act (15 U.S.C. § 77m). The provisions of § 13 apply only to actions based upon §§ 11 and 12 of the Act (15 U.S.C. §§ 77k and 77l). *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir. 1975); *see, Nortek Inc. v. Alexander Grant & Co.,* 532 F.2d 1013 (5th Cir. 1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977); *Geo. H. McFadden & Bro., Inc. v. Home-Stake Production Co.,* 295 F.Supp. 587 (D.Okl.1968).

5. Any possible doubt on that score is dispelled by the recent case, *Terranova, supra,* 563 P.2d at 367 (simple negligence cannot be the basis of liability under the Colorado Securities Act, scienter must be shown).

6. A separate section of the Colorado Securities Act, § 11–51–125(5), establishes a two year statute of limitations for civil actions arising *under that section.*

The substantive provisions of § 11–51–125 were adopted intact from the text of the Uniform Act, § 410, and are almost identical to § 12(2) of the Securities Act of 1933 (15 U.S.C. § 77l(2)). *Lowery v. Ford Hill Investment Co.,* 556 P.2d 1201, 1208–09 (Colo.1976); *see,* 7A Uniform Laws Annotated (1978), pp. 670–72 and Commissioners' Note, *id.* at 672.

As previously noted, § 11–51–123 is analogous to federal claims under Rule 10b–5 and under § 17 of the 1933 Act. As those provisions of federal law (and not § 12(2) of the 1933 Act) are the gravamen of plaintiff's federal claim, we look to 11–51–123 (and not 11–51–125) as being the more comparable provision of state law.

108(1)(a)), and upon all other actions of any kind for which no other period of limitation is provided (Colo.Rev.Stat. § 13–80–108(1)(b)). All three of these provisions set an identical three year limitations period. Without the necessity of further elaboration, it is thus apparent that, under one or another of these three statutes, a three year statute of limitations is provided by Colorado law for civil actions arising out of § 11–51–123 (the substantive state law provision which is most nearly comparable to the federal action brought by plaintiff herein).

It follows that, under the working of Colo.Rev.Stat. § 13–80–106 (the provision applicable to federal actions for which the Congress has set no statute of limitations), we apply, not the presumptive two year limitations period,[7] but rather the longer, three year period specified for the comparable Colorado Securities Act civil action.[8]

With respect to the state claims here alleged, sounding in common law fraud and negligent misrepresentation, the appropriate statute of limitations is the three year period provided in Colo.Rev.Stat. § 13–80–109 for actions based upon fraud.

In summary, we conclude that the governing statute of limitations is three years for each of the claims advanced by plaintiff.

**B**

■ Though the limitations period is supplied by the law of Colorado, the circumstances which will toll the running of the statute are matters of federal law. *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1225 (10th Cir. 1970); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir. 1967).

■ The federal rule is that the statute of limitations does not begin to run until the plaintiff knew or, in the exercise of due diligence, should have known of the alleged fraud. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 171 (10th Cir. 1974). The focus of the inquiry under the equitable tolling doctrine is the plaintiff and the question is whether plaintiff exercised due diligence in becoming aware of the wrong.

**C**

A final issue of law relevant to the instant case is the effect of fraudulent concealment on the running of the statute of limitations.

At the outset, we note that the cases have recognized at least two types of fraudulent behavior which may toll the statutory period. *See, Goldstandt v. Bear, Stearns & Co.*, 522 F.2d 1265, 1268 (7th Cir. 1975); *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir. 1975).

The first, and most common type, occurs where a fraud goes undetected even though the defendant has done nothing, after the commission of the wrong, to conceal it. Here, plaintiff's due diligence (or lack thereof) in becoming aware of the wrong is the essential issue. This court does not consider a situation such as this to constitute a fraudulent concealment. Indeed, this is nothing more than a variant of the equitable tolling doctrine since the focus of inquiry remains on the plaintiff. We consider this situation to be subsumed under the equitable tolling doctrine and do not consider it to call for separate attention or analysis.

■ The second, and more important type, occurs where the fraud goes undiscovered because the defendant has taken positive steps, after the commission of the wrong, to keep it concealed. Here the focus of inquiry shifts. Defendant's conduct will

---

7. Since we have no occasion to apply the presumptive two year limitation period of the statute, we need not reach the question whether the two year limit is constitutional. *Compare, Trussell, supra,* 228 F.Supp. at 775–76 (unconstitutional) with, *McKinney v. Armco Recreational Products, Inc.,* 419 F.Supp. 464, 467 (D.Colo.1976) (not unconstitutional).

8. We accordingly reach the same result, albeit by somewhat different reasoning, as that reached by the court in *Trussell, supra,* 228 F.Supp. at 776. *Accord, deHass v. Empire Petroleum Co.,* 435 F.2d 1223, 1225 (10th Cir. 1970).

toll the limitations period (without any special concern as to plaintiff's due diligence) until such time as plaintiff actually discovers the underlying wrong. This is what we mean when we speak of fraudulent concealment.

So understood, the concept of fraudulent concealment adds something significant beyond the ambit of the equitable tolling doctrine. Fraudulent concealment, that is, defendant's affirmative action in concealing a prior wrong which results in the wrong's going undiscovered, will toll the statute of limitations without regard to plaintiff's due diligence.

### III

The matter is now before the court on defendants' motions for summary judgment, based on the statute of limitations. Each litigant has filed affidavits and exhibits in support of its position.

Based upon our review of the complaint and those uncontradicted affidavits and exhibits of record, we conclude that there are no genuine issues of material fact in dispute and that defendants are entitled to judgment as a matter of law.

At the outset, we summarize several of the more important background facts which are uncontroverted. We will then proceed to analyze the contentions of the parties in terms of the three dispositive legal issues previously discussed.

■ Ohio's cause of action accrued no later than May 1, 1970. Plaintiff alleges that it purchased two promissory notes from King Resources Company and that the last such purchase occurred on or about May 1, 1970. The asserted securities fraud is alleged to have been in connection with those two purchases. The defendant lawyers are alleged to have assisted KRC and its accountants in materially overstating KRC's financial condition and Ohio con-

tends that it relied upon such false and misleading information when it bought the KRC notes in 1970. There can be no doubt that Ohio's cause of action against the lawyer defendants must have accrued no later than May 1, 1970. That is the date of the last alleged purchase or sale. There are no other allegations to suggest that any wrong actionable under the securities laws took place after that date.

Ohio knew that it had a cause of action against someone as early as 1972. On April 17, 1972, Ohio filed suit against KRC, its accountants (Arthur Andersen & Co.), a credit reporting firm (Dun & Bradstreet, Inc.), and others. *Ohio v. Crofters, Inc.,* 72–138 (S.D.Ohio Apr. 17, 1972). Defendants' Exh. A(XII). A review of the *Crofters* complaint clearly establishes that the underlying cause of action there asserted is the same as that which underlies the instant complaint.

Ohio knew that others, similarly situated, had filed complaints similar to the complaint it had filed in *Crofters* and that certain of these other plaintiffs had named as defendants the lawyer who had counseled KRC. At the very least, Ohio knew of those cases transferred to the United States District Court for the District of Colorado and consolidated for pretrial procedures pursuant to order of the Judicial Panel on Multidistrict Litigation, *In re King Resources Company Securities Litigation,* 342 F.Supp. 1179 (Jud.Pan.Mult.Lit.1972). The reason that Ohio must have known is that it, too, was a participant in those consolidated proceedings. *See, In re King Resources Company Securities Litigation,* 352 F.Supp. 975 (Jud.Pan.Mult.Lit.1972) (transferring *Ohio v. Crofters,* S.D.Ohio, No. 72–138, to the United States District Court for the District of Colorado for consolidated pretrial proceedings with the other cases). Among those other cases were four which named Mr. Timothy Lowry as defendant.[9]

---

9. *Gross v. Blyth & Co.,* No. 70–751 (D.Or. Nov. 9, 1970; *Dietrich Corp. v. King Resources Co.,* No. C–3424 (D.Colo. Sep. 28, 1971); *Morrell v. King,* No. C–71–805 (N.D.Ohio May 10, 1972); *Licker v. King Resources Co.,* No. C–71–882 (N.D.Cal. May 10, 1971).

See generally, *In re King Resources, supra,* 342 F.Supp. at 1184; Defendants' Exh. A(IV), A(VIII), A(XV).

The *Dietrich* complaint is particularly significant. In addition to naming Lowry, it alleges wrongdoing in connection with a certain sale of

Mr. Lowry was counsel to KRC, and was a partner in the law firm which is a defendant in the instant action.

Ohio knew that there was a reorganization proceeding which involved KRC pending in the United States District Court for the District of Colorado. The reason that Ohio must have known is that it, too, was a participant in those proceedings. Ohio filed its statement of claim in the amount of $8,000,000 in those proceedings on March 2, 1972. Defendants' Exh. C(II).

Finally, we observe, Ohio filed the instant lawsuit on October 7, 1976.

### A

As previously noted, the governing statute of limitations is three years for each of the claims now advanced by plaintiff against the defendant lawyers. Since the cause of action can have accrued no later than May 1, 1970, it follows that the statute of limitations expired no later than May 1, 1973. Because the instant suit was not filed until 1976, it follows that the suit is time barred unless the statute is somehow tolled.

### B

As previously noted, the statute of limitations does not begin to run until the plaintiff knew, or in the exercise of reasonable diligence, should have known of the alleged fraud.

Plaintiff alleges, and offers affidavits in support of the allegations, that it did not obtain actual knowledge of the defendant lawyers' involvement until sometime in 1976. The determinative issue thus is whether (and if so, when) plaintiff could have, in the exercise of due diligence, discovered the connection earlier than it did.

We find and conclude, on the undisputed facts before us, that plaintiff should, as a matter of law, have become aware of the defendant lawyers' involvement not later than August 21, 1973.

Prior to August 21, 1973, Ohio was aware that it had a cause of action arising out of its purchases of KRC notes. Prior to August 21, 1973, Ohio was aware that several other plaintiffs had named Mr. Timothy Lowry, counsel to KRC and partner in a Chicago law firm, as a defendant. Prior to August 21, 1973, Ohio was aware of the reorganization proceedings involving KRC.

On August 21, 1973, the trustee in the KRC reorganization filed an application with the court for permission to file suit, attaching a copy of the proposed complaint (which complaint, *Baer v. Franklin Supply Co.*, C–38733, was ultimately filed) naming as a defendant, not only Mr. Lowry, but also Mr. Lowry's law firm, Peterson, Lowry, Rall, Barber & Ross. Defendants' Exh. C(XII). The proposed complaint alleged that Lowry and his firm had defrauded KRC of some $1,100,000. As a creditor in the reorganization proceedings with a claim in the amount of $8,000,000, Ohio is charged with knowledge of what the trustee was doing and, specifically, with knowledge of the trustee's complaint.

At this point, in August of 1973, given all the other information which Ohio had, the conclusion is irresistible that, in the exercise of due diligence, Ohio should have realized that its cause of action embraced Mr. Lowry and his law firm. There are, at this point, simply too many palpable signs of the lawyers' involvement to excuse Ohio's continued ignorance. Ohio was then on inquiry and the statute began to run.

In assessing the meaning of due diligence, this court gives some weight to the amount in controversy and the legal sophistication of the party involved. In this case, the state of Ohio is much more than a casual dabbler in the securities market. The size of the claim alone implies that a degree of care and diligence should be employed in its pursuit. Nonetheless, even disregarding these factors, the court would

---

Canadian arctic properties. Complaint, ¶ 29, Defendants' Exh. A(VIII). This arctic sale is what plaintiff has characterized as "[p]erhaps the most significant single transaction" in its current suit. Carroway Affidavit at p. 2.

still conclude that plaintiff did not remain in ignorance without any want of diligence or care.[10]

The doctrine of equitable tolling, though perhaps applicable in this case up to a point, does not prevent the instant claim from being time barred. Whatever might have been the situation prior to August 21, 1973, Ohio should have (in the exercise of due diligence) become aware of its claim against the lawyers not later than that date. Applying the three year statute of limitations from that date, the instant suit is barred because it was not filed until October 7, 1976.

## C

Finally, we address the question of fraudulent concealment. Plaintiff alleges that defendant Lowry fraudulently concealed his wrongdoing by destroying his copy of a certain document.

The relevance of the destroyed document goes to what plaintiff describes as "[p]erhaps the most significant single transaction in the case," (Carroway Affidavit at p. 2). In brief summary, it appears that KRC held an interest in a large acreage of drilling permits in the Canadian arctic. Plaintiff alleges that KRC sold a small fraction of its interests, using the market prices of the sale to write up the book value of its remaining like assets in an amount of approximately $100,000,000. Ohio contends that the sales in question were not really arms length transactions at all, but that certain of the buyers were affiliated with KRC. Evidence of one such buyer's affiliation was, plaintiff asserts, contained in what it refers to as the Mecom side agreement.[11] Plaintiff alleges that defendant Lowry kept a copy of the Mecom side agreement in his office safe and then destroyed it.

Ohio first found out about the Mecom side agreement sometime in 1976, according to allegation and affidavit. It argues that defendant Lowry's destruction of his copy of the Mecom side agreement constitutes a fraudulent concealment which tolls the statute until such time as plaintiff actually discovers the underlying wrong.

There are two fatal flaws to plaintiff's argument. In the first place, the Arctic sales are not the only allegedly wrongful acts in which Lowry and his law firm are asserted to have participated. Even assuming that there is fraudulent concealment as to the Arctic sales, this would not toll the statute as to all the other, non-concealed acts which should have put Ohio on notice that it had a claim against Lowry or his law firm. In the second place, there simply is no fraudulent concealment as to Ohio. Mr. Lowry made no affirmative misrepresentations to Ohio with respect to the side agreement. It has been noted that "[f]raud is always concealed. If it was not no fraud would ever succeed." *Tomera, supra,* 511 F.2d at 510, *quoting, Smith v. Blachley,* 198 Pa. 173, 47 A. 985, 987 (1901). To rise to fraudulent concealment, there must be something more, perhaps personal or face-to-face deception. That added element is clearly absent here.

---

**10.** We note Ohio's argument that, just as courts have re-evaluated the due diligence standard as it relates to the merits of a securities claim, *see, e. g., Holdsworth v. Strong,* 545 F.2d 687, 693–95 (10th Cir. 1976), so should the courts re-evaluate the due diligence standard as it applies to tolling the statute of limitations.

One court which has, apparently, already taken that step with respect to the equitable tolling doctrine has noted that the proper inquiry should be whether a plaintiff intentionally refused to investigate in disregard of a known risk. *Osterneck v. E. T. Barwick Industries, Inc.,* 79 F.R.D. 47, 52 (N.D.Ga.1978).

We find and conclude that Ohio's argument is immaterial in the instant case. Upon the undisputed record, it is quite clear that Ohio's conduct exceeded simple negligence and amounted to intentional disregard of a known risk. Since Ohio cannot prevail, regardless of which standard is imposed, the instant case is not the appropriate one in which to address the current content of the due diligence standard.

**11.** Ohio alleges further that the so called side agreement is also evidence that the Mecom transaction was not even a sale at all but was, at the most, the grant of an option. Ohio thus challenges KRC's posting of an immediate profit of $4.2 million on its books as a result of such "sale."

We conclude that the element of fraudulent concealment is inapplicable in the instant case. The statute of limitations is not tolled.

## IV

■ Summary judgment is a drastic action, available only in a case where there are no material issues of fact and a formal trial would be useless. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977). The motion should be granted only when the moving party has established the absence of any genuine issue as to a material fact. *Williams Petroleum Co. v. Midland Cooperatives, Inc.*, 539 F.2d 694, 697 (10th Cir. 1976). The court must examine the summary judgment papers in the light most favorable to the party opposing the motion. *Nat'l Aviation Underwriters v. Altus Flying Service, Inc.*, 555 F.2d 778, 784 (10th Cir. 1977). All the ambiguities and disagreements must be resolved in favor of the party against whom summary judgment is sought. *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339–40 (10th Cir. 1976).

Cases involving defenses hinging on applicable statutes of limitations on occasion lend themselves to summary judgment. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 171 (10th Cir. 1974). On the other hand, the issue of due diligence is often a question of fact, inappropriate for summary disposition. *Dzenits, supra,* 494 F.2d at 172.

The court has examined the pleadings, exhibits, affidavits, and other material on file herein and concludes that no genuine issue as to any material fact exists in this case and that defendants are entitled to judgment as a matter of law. *See,* Fed.R. Civ.P. 56(c).

## V

We note in passing that our opinion has focused, thus far, and for clarity's sake, on those selected court pleadings in particular related proceedings as to which plaintiff was most obviously aware because of its own participation. Most prominent of these previously noted suits are *Dietrich* (*see,* note 9, *supra*) and the trustee's suit (*see,* p. 408, *supra*). We emphasize that this is just the tip of the iceberg.

Other noteworthy related litigation includes *Bottger v. King Resources,* C–3878 (D.Colo. Mar. 23, 1972) (second amended complaint, naming both Lowry and his law firm as defendants); *S. E. C. v. King Resources,* C–2858 (D.Colo. Jan. 25, 1971) (complaint naming Lowry as defendant); and *American Employers Ins. Co. v. King Resources,* C–3908 (D.Colo. Apr. 6, 1972) (complaint naming Lowry, including specific allegations of Lowry's involvement at ¶ 1–68, 95–102). These were all major cases involving KRC. They each received a great measure of publicity. *See generally,* Defendants' Exh. A. The state of Ohio had actual knowledge of these cases no later than 1973, *see,* Defendants' Exhibit D(XXIV) (1973 notes of one of Ohio's attorneys, summarizing the related litigation), if not much earlier.

In emphasizing the related lawsuits, as we have done, we do not mean to be understood as denigrating the importance of other undisputed facts in the record. We might refer to Defendants' Exh. D(XVIII) (Apr. 11, 1973 memo prepared by one of Ohio's attorneys which states that "[o]ur negligence in this case has been stunning.") and to Defendants' Exh. D(XXV). This remarkable document is a memo to the file originated by Ohio's chief counsel. The memo, Exh. (XXV), reflects a June 20, 1973 *call from Mr. Lowry's attorney* whereby Lowry's attorney sought *to ascertain whether Ohio would be amenable to settlement.*

These documents speak for themselves. We have relied upon these documents, as well as upon the entire record, in reaching our decision herein.[12]

## VI

In summary, we have found that the instant suit was filed in 1976, well after the

12. We note, for the record, that Ohio's current counsel were retained well after 1973 and that none of the acts or omissions referred to herein may be attributed to current counsel.

applicable statute of limitations had run. We have further found that neither the doctrine of equitable tolling of the statute nor the element of fraudulent concealment can, as a matter of law, prevent the running of the statute in this case.

Speaking plainly, what we are holding is this: Plaintiff was on notice, not later than August 21, 1973. This does not mean that plaintiff could have (or should have) filed suit on August 22, 1973. What it does mean, though, is that plaintiff must have filed a lawsuit in the next succeeding three years, on or before August 22, 1976. This it did not do. Inexplicably, the state of Ohio sat on its rights, failed to exercise even the slightest care, and so lost its right of action against these defendants.

Plaintiff cannot, in these circumstances, be heard properly to seek equitable relief in this court from the statute of limitations. Common sense rebels at the notion that Ohio, a sophisticated investor with $8,000,-000 at stake, could have remained in ignorance as long as it did. Common sense likewise rebels at the notion (so strenuously argued by Ohio) that a general fraudulent scheme of such large proportions as this could be rendered undiscoverable by any alleged concealment of a single part.

This is a case in which plaintiff waited six years from the time its cause of action accrued before bringing suit. We are satisfied that the instant case is more than appropriate for summary disposition.

### ORDER

Accordingly, and for all the reasons stated above, it is hereby ORDERED that defendants' Motions for Summary Judgment are GRANTED.

Judgment shall enter for defendants and against the plaintiff. Plaintiff's complaint and cause of action are hereby dismissed. Defendants to recover their costs.