WILLIAMS PETROLEUM COMPANY, a partnership composed of William H. Clement and H. C. Preston, Jr., Plaintiff-Appellee,

v.

MIDLAND COOPERATIVES, INCORPO-RATED, a corporation, Defendant-Appellant.

No. 75–1688.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 21, 1976.

Decided July 20, 1976.

As Amended on Rehearing Sept. 14, 1976.

John L. Belt, Oklahoma City, Okl. (and James E. Britton, Oklahoma City, Okl., on the brief), of McClelland, Collins, Sheehan, Bailey, Bailey & Belt, Oklahoma City, Okl., for plaintiff-appellee.

Rita Page Reuss, Minneapolis, Minn. (and Donald L. Worthington, Stillwater, Okl., on the brief), for defendant-appellant.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Midland Cooperatives Incorporated (Midland) appeals a summary judgment entered in favor of Williams Petroleum Company (Williams).

This diversity action arises from a contract entered into between Midland and Williams, under the terms of which Williams was to act as an independent crude oil purchasing consultant for Midland. Williams was to be paid a finder's fee of .05 per barrel if successful in obtaining a new source of supply for Midland.

The following facts may aid in placing this controversy in proper perspective. In late 1972 and early 1973, Midland experienced severe shortages of crude oil. The situation became so critical that its refinery was forced to shut down for several weeks. In an attempt to alleviate this problem, Midland entered into a contract with Williams whereby Williams was to attempt to find new sources of crude oil for the Midland Refinery at Cushing, Oklahoma.[1] Mid-

---

1. The agreement provides in pertinent part:
   . . . It is further understood crude oil that

Williams Petroleum Company shall find and assist in contractually securing and delivering

land's representatives prepared the contract.

Williams thereafter attempted to locate new sources of supply on behalf of Midland. It focused its efforts on obtaining crude oil from the Federal Government by means of purchase of federal royalty oil as authorized under the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1334, enacted in 1953. It authorized the Secretary of the Interior to lease Continental Shelf lands and to sell royalty oil accruing or reserved to the United States. No application for the purchase of royalty oil from the Continental Shelf was made until 1972. The delay in the actual purchase of such oil was the result of the fact that it was not until 1972 that regulations were issued governing its sale. *See* 30 C.F.R. § 225A. The first contracts for the purchase of Continental Shelf royalty oil were executed in 1973.

Williams began its efforts to gain information on the purchase of Continental Shelf royalty oil in January of 1973 when Wayne Lax, its General Manager, contacted a representative of the United States Geological Survey (U.S.G.S.), Gulf of Mexico Operations. Lax testified that at his meeting with the U.S.G.S. representative he acquired general information relative to the federal royalty oil program. After Lax gained this information he contacted Forrest Fuqua, Midland's Vice President of Natural Resources and Refining, and discussed the possibility of Williams acting as agent for Midland in acquiring a new source of supply of crude oil. Apparently no mention was made during this discussion of the federal royalty oil program. Fuqua indicated that Midland would be interested in having Williams act as its agent for this limited purpose. On February 8, 1973, it was agreed that Williams was to act as Midland's agent for the purpose of finding a new source of supply of crude oil for Midland. This agreement was embodied in Midland's letter to Lax of that date, relevant portions of which have previously been recited.

Following the execution of the February 8th agreement, Lax again met with a U.S. G.S. representative and discussed the possibility of Midland acquiring federal royalty oil. Lax obtained all forms necessary for the purpose of making an application for purchase. On February 11, 1973, Lax sent Fuqua a telegram stating that Williams had undertaken efforts to pursue the federal royalty oil program on behalf of Midland. The following day Lax and Fuqua conferred by telephone. Fuqua testified that he then told Lax that Midland did not want Williams to pursue the federal royalty oil source of supply. Lax continued his efforts to acquire the exchange agreements required in order to deliver the oil to Midland's Cushing refinery. On March 6, 1973, Midland again informed Williams that it did not consider the federal royalty oil a new source of supply and it notified Williams that it was terminating the letter agreement of February 8, 1973.

Midland filed an application for purchase of the royalty oil after it notified Williams of the termination of the agreement. Thereafter Midland was successful in working out exchange agreements with Sun Oil Company. On July 13, 1973, Midland's application to the U.S.G.S. was accepted. It was allowed to purchase 11,080 barrels of royalty oil per day.

Williams filed the instant suit against Midland seeking to recover the finder's fee of .05 per barrel on the crude oil that Midland acquired pursuant to the royalty oil contract with the government. The district court entered summary judgment in favor of Williams in amount of $319,122.17 repre-

to our Cushing Refinery shall be covered by this letter agreement . . .

\* \* \* \* \* \*

. . . In the event that Williams furnishes a new source of supply and no contractual arrangements are consummated then in that event if this company shall enter into a con-

tractual relationship for crude oil within one year (1) with that new source of supply then Williams Petroleum Company shall receive its finder's fee as provided for in this agreement. This stipulation shall not apply to supply sources historically used by this company. [R.Vol. I, pp. 4–5].

senting .05/barrel on oil delivered to the date of entry of judgment, together with interest of $18,808.98. Further, the Court ordered that so long as Midland shall receive directly or through exchange agreements, U.S. Government royalty oil through the contract of July 13, 1973, or any renewals or extensions or novations thereof, Midland shall pay Williams the sum of $.05 per barrel on the oil thus received.

On appeal, Midland raises the following issues: (1) whether the court erred in entering summary judgment because the letter agreement cannot properly be read to include Outer Continental Shelf royalty oil as being "found" by Williams; and (2) whether genuine issues of material fact exist rendering entry of summary judgment improper.

## I.

Midland challenges the summary judgment on the basis that the court erred in interpreting the contract because it cannot be said that the Outer Continental Shelf royalty oil was "found" by Williams. We disagree.

■ Courts cannot change terms of an unambiguous contract. They may simply interpret it. *James Talcott, Inc. v. Finley*, 389 P.2d 988 (Okl.1964). Contracts are to be construed as a whole, with each clause helping to interpret others. *Metropolitan Life Insurance Company v. Fisher*, 382 P.2d 434 (Okl.1962). And of particular application here is the rule that courts will not make a better contract for the parties than that which they have seen fit to enter into, nor may the courts alter a contract for the benefit of one party and to the detriment of another. *Great Western Oil & Gas Company v. Mitchell*, 326 P.2d 794 (Okl.1958).

■ The agreement in the case at bar provided that Williams was to find and assist in contractually securing and delivering to Midland's refinery at Cushing a supply of crude oil. This language imposed an obligation upon Williams to "find" a supply of crude oil for Midland. The record reflects, without contradiction, that Williams

"assisted" Midland in obtaining the contract for the purchase of federal royalty oil. Lax discussed the possibility of Midland obtaining royalty oil with a representative of the U.S.G.S. after the Williams-Midland agreement had been executed; he obtained the forms necessary for Midland's application; he informed the U.S.G.S. of Midland's interest in participating in the program; and he informed Midland of the urgency of filing its application. Thus there is no question as to whether Williams assisted Midland in obtaining the royalty oil. Williams clearly assisted Midland in obtaining a new source of supply.

The contract discloses that Williams was to "find and assist" Midland in obtaining crude oil. Furthermore, the agreement provides that Williams was to find a new source of supply therein defined as a source of supply not historically used by Midland. It is undisputed that Midland had not participated in the royalty oil program until 1973. Indeed, no small refinery had obtained oil through this program until 1973. Thus, there can be no question that this source of supply had not been historically used by Midland.

We are unpersuaded by Midland's argument that Williams did not "find" the federal royalty oil. Williams informed Midland, both by telephone and telegram, of the possibility of Midland's participation in the royalty oil program. Midland had not previously informed Williams of its interest in the program. Apparently, the first communication between the two companies regarding the royalty oil program was generated by Williams' contact with the U.S.G.S. after the agreement had been executed. Midland would have us go beyond the fact of the agreement and interpret it in such a manner that Williams could not recover a finder's fee on any source of supply that Midland was aware of. Oklahoma law does not permit courts to re-write a contract for the parties. *Cities Service Oil Co. v. Geolograph Co.*, 208 Okl. 179, 254 P.2d 775 (1953). Nor may a court write a better contract for the parties than that which they have seen fit to enter into. *Great Western Oil & Gas*

*Company, supra.* Midland made the mistake of not specifically defining in the written agreement those sources of supply that it did not intend Williams to pursue. Under the plain provisions of the agreement we cannot imply terms that simply do not exist. *James Talcott, Inc. supra.* Furthermore, ambiguities in contracts are to be resolved against the artless drafter. *Cities Service Oil Co., supra*; 15 Okl.St.Ann. § 170; *King–Stevenson Gas & Oil Company v. Texam Oil Corporation,* 466 P.2d 950 (Okl.1970); *Dooley v. Cordes,* 434 P.2d 289 (Okl.1967). We hold that the trial court did not err in finding that Williams performed its contractual obligation of "finding" a new source of supply.

## II.

Midland contends that genuine issues of material fact exist, thereby rendering the entry of summary judgment improper. *See* Fed.Rules Civ.Proc. Rule 56, 28 U.S.C.A.

A motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 F.2d 168 (10th Cir. 1974); *James v. Atchison, Topeka and Santa Fe Railway Company,* 464 F.2d 173 (10th Cir. 1972). Appellate courts must view all factual inferences in the light most favorable to the party opposing the motion. *Mustang Fuel Corporation v. Youngstown Sheet and Tube Company,* 516 F.2d 33 (10th Cir. 1975); *Harman v. Diversified Medical Investments Corporation,* 488 F.2d 111 (10th Cir. 1973).

In line with the above rules, we shall review the facts of this case in the light most favorable to Midland. Midland was aware of the federal royalty oil program; Midland had visited with U.S.G.S. representatives about its possible participation in the program; Midland did, in fact, file an application for participation in the program and the application was prepared on Midland's stationery rather than on the forms purportedly furnished by Williams; Midland obtained exchange agreements necessary to obtain crude oil to Cushing; and

Midland was awarded a contract for purchase of federal royalty oil. These facts demonstrate that Midland actively pursued this source of supply. These circumstances do not, however, negate the fact that Williams did "find and assist" in securing the federal royalty oil source of supply. Williams informed the U.S.G.S. of Midland's interest in participating in the program, and it thereafter notified Midland of the urgency of filing its application. We agree with the trial court's finding that there exists no genuine issue of material fact precluding entry of a summary judgment. *Dzenits, supra.*

We hold that the trial court did not err in entering summary judgment for Williams.

WE AFFIRM.