**Joan E. KIRKPATRICK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–77–0511–D.**

United States District Court, W. D. Oklahoma.

Feb. 21, 1978.

William J. Robinson, Oklahoma City, Okl., for plaintiff Kirkpatrick.

John E. Green, Acting U. S. Atty. by Richard F. Campbell, III, Asst. U. S. Atty., Oklahoma City, Okl., Gerald B. Leedom, Atty., and M. Carr Ferguson, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., John F. Murray, Chief Civil Trial Section, Southern Region, Washington, D. C., for defendant United States.

ORDER GRANTING SUMMARY JUDGMENT

DAUGHERTY, Chief Judge.

This is an action for a tax refund in which Plaintiff seeks recovery of income

taxes alleged to have been erroneously, illegally and improperly assessed and collected from Plaintiff. It is asserted that the Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1346(a)(1).

Pursuant to Rule 56, Federal Rules of Civil Procedure, Plaintiff has filed herein a Motion for Summary Judgment and a Brief in support thereof. Defendant has filed a Cross-Motion for Summary Judgment and supporting Brief to which Plaintiff has responded.

From the record before the Court in this case it appears without dispute that certain bonds known as "Oklahoma Industries Authority, First Mortgage Gross Revenue Bonds 1973, Mercy Hospital Building Series" (Bonds) in the principal amount of $5,300,000.00 were issued by the Oklahoma Industries Authority (Authority) and Plaintiff purchased $175,000.00 worth of the Bonds. All or a major portion of the proceeds from the sale of the Bonds were used to construct and furnish a professional office building, Mercy Doctors Tower (Tower), located adjacent to Mercy Hospital in Oklahoma City. The Tower was leased to Mercy Hospital by the Authority. Prior to July 22, 1977, Mercy Hospital as lessor, or its agent acting on its behalf, had entered into twenty-five subleases covering all of the office space in the Tower ready for occupancy which amounted to twenty-nine per cent of the Tower's total leasable floor space.

Plaintiff did not report the interest she received from the Bonds as part of her gross income for the tax years 1973 and 1974 and tax deficiencies were later assessed against her in the amount of $3,320.00 for 1973 and $6,651.00 for 1974. Plaintiff paid these assessments and brought this action seeking to recover $9,971.00 plus interest and attorney's fees.

In support of her Motion for Summary Judgment, Plaintiff contends that interest on the Bonds is not included as gross income under 26 U.S.C. § 103[1] as Mercy Hospital is an "exempt person" within the meaning of 26 U.S.C. § 103(b)(3)(B); that the leasing of the Tower to the subtenants by Mercy Hospital is not a trade or business carried on by it which is an unrelated trade or business; that the subtenants of the Tower contribute importantly to the accomplishment of the purpose for which Mercy Hospital was granted a tax exemption under 26 U.S.C. § 501(a); and that the proceeds of the Bonds are being used directly or indirectly in the trade or business of Mercy Hospital. Defendant contends that the Bonds are industrial development bonds within the meaning of 26 U.S.C. § 103(b)

1. The portion of 26 U.S.C. § 103 pertinent to this case is as follows:

"(a) *General rule.*—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia; and

(2) qualified scholarship funding bonds.

(b) *Industrial development bonds.*—

(1) *Subsection (a)(1) or (2) not to apply.*—Except as otherwise provided in this subsection, any industrial development bond shall be treated as an obligation not described in subsection (a)(1) or (2).

(2) *Industrial development bond.*—For purposes of this subsection, the term 'industrial development bond' means any obligation—

(A) which is issued as part of an issue all or a major portion of the proceeds of which are to be used directly or indirectly in any trade or business carried on by any person who is not an exempt person (within the meaning of paragraph (3)), and

(B) the payment of the principal or interest on which (under the terms of such obligation or any underlying arrangement) is, in whole or in major part—

(i) secured by any interest in property used or to be used in a trade or business or in payments in respect of such property, or

(ii) to be derived from payments in respect of property, or borrowed money, used or to be used in a trade or business.

(3) *Exempt person.*—For purposes of paragraph (2)(A), the term 'exempt person' means—

(A) a governmental unit, or

(B) an organization described in section 501(c)(3) and exempt from tax under section 501(a) (but only with respect to a trade or business carried on by such organization which is not an unrelated trade or business, determined by applying section 513(a) to such organization)."

and therefore the interest on the Bonds is taxable as all or a major portion of the proceeds from the sale of the Bonds were used to construct, expand and/or furnish the Tower and all of the subtenants of the Tower are non-exempt persons within the meaning of 26 U.S.C. §§ 103(b)(2)(A) and 103(b)(3).

Rule 56, Federal Rules of Civil Procedure, provides in part:

"(c) *Motion and Proceedings Thereon.* . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A summary judgment is a drastic action available only in a case where there are no material issues of fact and a formal trial would be fruitless. *Webbe v. McGhie Land Title Co.,* 549 F.2d 1358 (Tenth Cir. 1977); *Frey v. Frankel,* 361 F.2d 437 (Tenth Cir. 1966). A Motion for Summary Judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact. *Williams Petroleum Co. v. Midland Cooperatives, Inc.,* 539 F.2d 694 (Tenth Cir. 1976); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 F.2d 168 (Tenth Cir. 1974); *James v. Atchison, Topeka and Santa Fe Railway Co.,* 464 F.2d 173 (Tenth Cir. 1972). The Court must examine the summary judgment papers in the light most favorable to the party opposing the Motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *National Aviation Underwriters v. Altus Flying Service, Inc.,* 555 F.2d 778 (Tenth Cir. 1977); *Webb v. Allstate Life Insurance Co.,* 536 F.2d 336 (Tenth Cir. 1976); *Frey v. Frankel, supra.* All the ambiguities and disagreements must be resolved in favor of the party against whom summary judgment is sought. *Webb v. Allstate Life Insurance Co., supra.* The Court must consider factual inferences tending to show triable issues in the light most favorable to the existence of such issues and summary judgment must be denied unless the movant demonstrates his entitlement to it beyond a reasonable doubt. *National Aviation Underwriters v. Altus Flying Service, Inc., supra; Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (Tenth Cir. 1975). And where different ultimate inferences may properly be drawn, the case is not one for summary judgment. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Webb v. Allstate Life Insurance Co., supra.*

The Court has examined the pleadings, depositions, answers to interrogatories, admissions and affidavits on file herein and concludes that no genuine issue as to any material fact exists in this case. In response to Request Number 1 of Defendant's First Set of Requests for Admissions, Plaintiff admitted that all or a major portion of the proceeds from the sale of the Bonds were applied, or otherwise spent in connection with, the construction, expansion and/or furnishing of the Tower. Plaintiff responded to Interrogatory Number 1(a) of Defendant's First Set of Interrogatories by stating that none of the subtenants of the Tower are or have been organizations described in 26 U.S.C. § 501(c)(3) which are exempt from tax under 26 U.S.C. § 501(a). In response to Request Number 3 of Defendant's First Set of Requests for Admissions, Plaintiff admitted that none of the tenants occupying the Tower were governmental units. Plaintiff and Defendant have stipulated in the Pretrial Order filed herein on October 20, 1977, that the payment of the principal and interest on the Bonds is, in whole or in major part, to be derived from payments in respect of property, namely the Tower. Therefore, in order for the Court to hold that the Bonds are industrial development bonds, the Court must find that the "dual use" of the Tower (i. e. the leasing of the Tower to and by Mercy Hospital and the subleasing from Mercy Hospital of part of the Tower by non-exempt persons) constitutes the use of all or a major portion of the proceeds of the Bonds directly or indirectly in any trade or business carried on by a non-exempt person.

The Conference Committee Report of the Congress which enacted the industrial bond development provision states in part:

"[I]f all or a major portion of the proceeds of an issue . . . are to be used to construct facilities to be leased to *any* person who will in turn lease them to another person who is not an exempt person for use in a trade or business carried on by him, such proceeds are to be used in a trade or business carried on by a person who is not an exempt person and the obligations comprising such issue are industrial development bonds." Conf. Rep.No.1533, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2373 at 2381 (Emphasis added).

The above passage makes it clear that Congress intended that bonds whose proceeds were used to build facilities to be leased to *any* person, whether exempt or not, who in turn leased them to non-exempt persons would constitute industrial development bonds. In the instant case, the record before the Court clearly establishes that the Tower was build with the proceeds of the Bonds and leased to Mercy Hospital, an exempt person. Mercy Hospital later subleased twenty-nine per cent of the floor space of the Tower, which was all of the space that was ready for occupancy, to non-exempt persons.

In view of the foregoing, the Court finds and concludes that a major portion of the proceeds from the Bonds are being used directly or indirectly in the trade or business of non-exempt persons,[2] the subtenants of the Tower, and that the payment of the principal and interest of the Bonds is being derived from payments in respect of property used in a trade or business. Therefore,

the Bonds are industrial development bonds within the meaning of 26 U.S.C. § 103(b)(2) and the interest thereon is to be included as gross income for income tax purposes. Accordingly, Defendant is entitled to a judgment as a matter of law.

As there is no genuine issue as to any material fact herein and Defendant is entitled to a judgment as a matter of law, Defendant's Cross-Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be overruled and this action dismissed.

It is so ordered this 21 day of February, 1978.

---

**2.** Treas.Reg. § 1.103–7(b)(3)(iii) (1972) provides in part as follows:

"The use of more than 25 percent of the proceeds of an issue of obligations in the trades or businesses of nonexempt persons will constitute the use of a major portion of such proceeds in such manner. In the case of the direct or indirect use of the proceeds of an issue of obligations or the direct or indirect use of a facility constructed, reconstructed, or acquired with such proceeds, the use by all nonexempt persons in their trades or businesses must be aggregated to determine whether the trade or business test is satisfied. If more than 25 percent of the proceeds of a bond issue is used in the trades or businesses of nonexempt persons, the trade or business test is satisfied."

Therefore, as twenty-nine per cent of the Tower is occupied by nonexempt persons, the twenty-five per cent requirement of the above regulation has been satisfied in the instant case.