**Joan E. KIRKPATRICK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 78–1186.**

United States Court of Appeals,
Tenth Circuit.

Argued July 17, 1979.

Decided Sept. 10, 1979.

Rehearing Denied Oct. 4, 1979.

William J. Robinson, Oklahoma City, Okl. (Shirk, Work, Robinson & Williams, Oklahoma City, Okl., with him on the briefs), for appellant.

Robert S. Pomerance, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Richard W. Perkins and Michael J. Roach, Attys., Tax Division, Dept. of Justice, Washington, D. C., Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him on the brief), for appellee.

Before SETH, Chief Judge, and BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

█ In this taxpayer's suit for refund of federal income taxes the issue is whether interest income from bonds issued by the Oklahoma Industries Authority is taxable income. The district court so held and granted summary judgment for the United States. *Kirkpatrick v. United States,* W.D. Okl., 449 F.Supp. 186. We affirm.

Oklahoma Industries Authority, an agency of the State of Oklahoma, issued $5,300,-000 principal amount "First Mortgage Gross Revenue Bonds." Plaintiff-appellant purchased $175,000 of these bonds and, on her 1973 and 1974 federal income tax returns, did not include as gross income the interest which she received from the bonds. The

Commissioner of Internal Revenue assessed deficiencies of $9,971, which the taxpayer paid. She filed a claim for refund and, after its denial, sued in the Western District of Oklahoma for refund.

Proceeds from the bond issue were used to construct a professional office building, Mercy Doctors Tower, adjacent to Mercy Hospital. The Tower was leased to Mercy, a tax exempt organization. See 26 U.S.C. § 501(c)(3). Beginning in October, 1973, Mercy subleased space in the Tower to a variety of tenants, including doctors, a medical laboratory, a sandwich shop, a pharmacy, an optician, and a dress shop. By December, 1977, 29% of the leasable space, all of the Tower space then available for occupancy, had been subleased. 449 F.Supp. at 189. None of the subtenants were exempt from federal income tax.

After discovery, each party moved for summary judgment. The district court held that no material issues of fact were presented and granted summary judgment for the United States. In so ruling the court concluded that the bonds were industrial development bonds because a major portion of the proceeds were used in the trade or business of nonexempt persons, the subtenants of Mercy. This appeal questions the validity of that ruling.

Section 103(a)(1), 26 U.S.C., provides that gross income does not include interest on the obligations of a state or of one of its political subdivisions. A 1968 Act, now codified as 26 U.S.C. § 103(b)(1), provides that an industrial development bond shall be treated as an obligation, the interest on which is taxable. Section 103(b) establishes two tests, both of which must be met, for determining whether an obligation is an industrial development bond. Subparagraph (2)(A) creates a trade or business test which is met by an obligation, the major portion of the proceeds of which "are to be used directly or indirectly in any trade or business carried on by any person who is not an exempt person." Subparagraph (2)(B) provides a security interest test which is satisfied if payment of the bond

principal and interest is secured or derived from property in a trade or business. In the instant case, the security test is met and the question relates to the trade or business test.

Application of the test requires determination of the meaning of (1) "exempt person" and (2) "major portion." We consider first "exempt person." The term is defined in § 103(b)(3)(B) as

"an organization described in section 501(c)(3) and exempt from tax under section 501(a) (but only with respect to a trade or business carried on by such organization which is not an unrelated trade or business, determined by applying section 513(a) to such organization)."

The unrelated business concept comes from § 511(a)(1) which imposes a tax "on the unrelated business taxable income" of an organization described in section 501(c)(3). See § 511(a)(2). The phrase "unrelated business taxable income" is defined by § 512(a) to mean "the gross income derived by any organization from any unrelated trade or business (as defined in section 513)." That section in its subparagraph (a) defines "unrelated trade or business" as "any trade or business the conduct of which is not substantially related * * * to the exercise or performance by such organization of its * * * function" exempting it from taxation under § 501. Treas.Reg. 1.513–1(d)(2), 26 CFR, says that "substantially related" means that there must be a substantial causal relationship of the business activities to the exempt purpose.

Sections 501, 511, 512 and 513 pertain to the tax liability of Mercy on income received from an unrelated trade or business. We are not concerned with the tax liability of Mercy, but rather with the taxability of income received from the bond issue of the Authority. That depends on whether the bonds are industrial development bonds within the purview of § 103(b)(2)(A). The reference in § 103(b)(3)(B) to the application of § 513 confuses the tax liability of Mercy with the status of the bonds, but is for the purpose of determining who is "an exempt person." The government concedes that Mercy is an exempt person.

Taxpayer argues that the "exempt person" provision of that section applies only to Mercy. The government contends that the provision applies to Mercy's subtenants. We agree with the government. Consideration of § 103 together with §§ 501 and 513 convinces us that the intent of the 1968 amendment was to assure that an exempt organization could not be used as a conduit to enable nonexempt persons to receive benefits arising from the use of bond proceeds in their trades and businesses. The legislative history of the 1968 amendments shows this intent.

The Conference Committee Report on what is now § 103(b)(2) says, Conf.Rep. No. 1533, 90th Cong.2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2373, 2381, that under § 103(b)(2)(A) an obligation is an industrial development bond if all or a major portion of its proceeds

"are to be used to construct facilities to be leased to any person who will in turn lease them to another person who is not an exempt person for use in a trade or business carried on by him * * *." [Underlining supplied.]

This is followed, Id., by the statement that when the bond proceeds "are to be used directly or indirectly in any trade or business carried on by any person who is not an exempt person," the obligations are industrial bonds "unless all or a major portion of such proceeds are to be used directly or indirectly only in a trade or business carried on by a person who is an exempt person, and are not to be used in any trade or business carried on by any person who is not an exempt person." [Underlining supplied.] See also Example 8 which follows. Id. at 2383.

The proceeds from the bonds in question were used to construct facilities which were leased to Mercy which in turn leased them to nonexempt persons for use in their activities. Mercy was the conduit which permitted nonexempt persons to benefit from the use of the bonds proceeds. We have exactly the situation which Congress intended to prevent.

Taxpayer's reliance on Treas.Reg. 1.103–7(b)(2) is misplaced. The reference there to an "exempt person" applies only to Mercy which is admittedly exempt. Of more importance is Treas.Reg. § 103–7(b)(3)(ii), 26 CFR, which says what when bond proceeds are to be used to construct facilities to be leased to an exempt person who will lease to a nonexempt person for use in a trade or business, the obligation is an industrial development bond.

Taxpayer cites Rev.Rul. 69–463, C.B. 1969–2, p. 131, which was concerned with § 513 of the 1954 Internal Revenue Code, not with the 1968 amendments relating to industrial development bonds. The question related to the activities of the hospital in performance of its contract with a medical group. The ruling was that the hospital's performance of its contract was not an unrelated trade or business and therefore did not remove its tax exemption under § 501(c)(3).

Of more significance is Rev.Rul. 77–352, C.B. 1977–2, pp. 34–35. It holds that bonds issued to construct an office building owned by a hospital and leased primarily for individual and private practice of doctors who are not hospital employees but who are affiliated with the hospital will be industrial development bonds.

Mercy's subtenants are not exempt persons. Hence, the use of proceeds from the Authority bonds in the activities of the subtenants makes the bonds industrial development bonds within § 103(b)(2)(A) if a major portion of the bond issue is used in the trades or businesses of those persons. We turn to that question. Treas.Reg. 1.103–7(b)(3)(iii) says:

"The use of more than 25 percent of the proceeds of an issue of obligations in the trades or businesses of nonexempt persons will constitute the use of a major portion of such proceeds in such manner."

Taxpayer argues that the 25% test is not met because during 1973 and 1974, the taxable years in question, the occupancy by nonexempt persons was, at the most, 6.17%. The court found that the subleases in 1977 amounted to 29% of the total space and included all space then available for occupancy. 449 F.Supp. at 189. Taxpayer would have taxability of income from the bond issue fluctuate from year to year in accordance with the percentage of space then occupied by nonexempt persons. Section 103(b)(2)(A) contemplates no such impractical result. It refers to a bond issue, the proceeds from which "are to be used" in a trade or business of a nonexempt person. The language speaks to the future. The tenancy of the Tower in 1977 shows an original intent to use the space for nonexempt persons. We reject the taxpayer's fluctuating approach with its attendant and continuing uncertainties.

Taxpayer argues that summary judgment should not have been granted because a fact issue existed of whether Mercy's subleasing activities constituted a trade or business unrelated to Mercy's exempt functions. We do not agree. The material facts are not disputed. The relationship of the activities to the exempt functions may be pertinent to the tax liability of Mercy but that is of no concern to us. We have the legal question of whether the undisputed facts bring the Authority's bond issue within the statutory definition of industrial development bonds. The related statutes considered as a whole, the expressed legislative intent, and the administrative construction convince us that the bonds are industrial development bonds, the interest on which must be included in the gross income of the taxpayer.

Affirmed.