COMAVI INTERNATIONAL, LIMITED, Comavi Maintenance (PTY) Limited, Comavi Sales (PTY) Limited, Comavi Asia (PTE) Limited, Comavi Avionics (PTE) Limited, Comavi (PTY) Limited (in liquidation) acting By and Through G.E. Taylor, Liquidator, Johannesburg, Republic of South Africa, Plaintiffs,

Thor Figenschou, Individually, Plaintiff-Appellant,

Fielding D. Haas, Appellee,

v.

ROCKWELL INTERNATIONAL CORPORATION, a corporation, acting By and Through its wholly-owned division, General Aviation Division, Bethany, Oklahoma, Defendant.

No. 84–1107.

United States Court of Appeals, Tenth Circuit.

July 30, 1986.

W. Rodney DeVilliers, Jr., Oklahoma City, Okl., for plaintiff-appellant Thor C. Figenschou.

Fielding D Haas, Norman, Okl., pro se.

Before BARRETT and McKAY, Circuit Judges, and THEIS,* District Judge.

* Honorable Frank G. Theis, United States District Judge for the District of Kansas, sitting by desig- nation.

THEIS, District Judge.

This appeal concerns a dispute over settlement proceeds from litigation involving multiple party plaintiffs and defendant Rockwell International Corporation. The ancillary jurisdiction of the trial court was sought by Fielding D. Haas, attorney for the plaintiffs, due to a controversy with appellant and plaintiff below, Thor C. Figenschou, over Haas' employment contract.

On December 26, 1980, Figenschou and Haas entered into a retainer agreement, which provided that Figenschou would pay all litigation expenses and a contingent fee of twenty-five percent of any recovery, less any amount previously paid to counsel Haas on an hourly basis. On December 30, 1980, Haas filed a complaint on behalf of Figenschou and his primary corporation, Comavi International, Ltd., against Rockwell International Corporation, alleging various breaches of contract and fraud. During discovery, Haas traveled to South Africa and the Far East to take depositions. To cover the expenses of travel and discovery, Figenschou deposited $88,960.50 in Haas' trust account. The total litigation expenses amounted to $89,019.64.

The depositions taken in South Africa and the Far East were not favorable to Figenschou and the other plaintiffs. They reflected that Figenschou had fled South Africa to avoid adverse actions by the South African government; that Figenschou had been charged with fraud by the Malawian government; and that Figenschou had "pocketed" certain sales proceeds. Furthermore, the depositions indicated that no sales commissions had been lost due to the actions of Rockwell, which was the basis for the portion of the plaintiff's suit relating to the Far East operations. Finally, a telex suggested that the statute of limitations barred the phase of the lawsuit situated in South Africa.

On February 2, 1983, the parties in the underlying action engaged in a settlement conference before Judge Eubanks, with no results. By agreement the parties submitted their case to an advisory jury on February 22, 1983. The jury rendered an advisory verdict in favor of Rockwell International Corporation and awarded the corporation $465,000 on its cross-complaint against Figenschou. At a settlement conference following the advisory verdict, Rockwell offered to pay $375,000, to forgive certain notes, and to forgive two aircrafts valued at $150,000.

Counsel Haas judged the case to be hopeless. Judge Eubanks commented at the settlement conference that Figenschou had "an excellent chance of losing . . . ." (Tr. Vol. VIII, p. 18). After the settlement conference, Haas approached Figenschou and suggested a compromise on Haas' fee. Haas drafted a handwritten memorandum, dated February 27, 1983, which stated: "Thor—If you elect to settle your case for the offered sum of $375,000, I will reduce my fee from 25% of that figure to 21.3334% of that figure. s/F. Haas." On February 28, 1983, Figenschou accepted the Rockwell offer.

Prior to the settlement conference, Figenschou had informed Haas that he was seeking another opinion relative to the settlement negotiations. The facts are disputed at this point. Haas claims that Figenschou had no intention of following the memorandum agreement of February 27, 1983, and that Figenschou had hired the law firm of DeVilliers & DeVilliers to represent him in contesting the fee due to Haas. Haas also contends that the DeVilliers firm had contacted G.E. Taylor, the liquidator of the Comavi company in South Africa, to interfere with the settlement. Figenschou argues that Haas refused to proceed to trial and forced Figenschou into a settlement with Rockwell by refusing to withdraw to allow the entry of another attorney unless he was paid the $23,000 in hourly fees owing to him.

Haas attempted to procure Figenschou's signature on the documents necessary to effectuate the settlement agreement in the underlying suit. Finally, Haas obtained an order for Figenschou to appear and show cause why he should not be held in contempt for his refusal to effect the settlement agreement of February 28, 1983. On

914

May 18, 1983, upon Haas' motions to compel performance of the settlement agreement and for the distribution of the settlement proceeds, the trial court approved the distribution of $80,000 to Haas for attorneys fees and $13,708 to the liquidator for Comavi. A portion of the settlement proceeds were distributed to Figenschou and the balance was retained pending further order of the court.

On November 14, 1983, the trial court held an evidentiary hearing on Haas' motion for a final order of distribution. The court ruled that Haas and Figenschou had entered into an accord and satisfaction, that Haas was entitled to the $80,000, that the liquidator for Comavi should receive $13,708, and that, as a prevailing party, Haas was entitled to a fee for defending his right to his original fee.

Initially, Figenschou contends the trial court erred in construing the memorandum agreement of February 27, 1983, to allow Haas $80,000 in fees. Figenschou cites the general proposition that ambiguities in a contract must be construed against the drafter, *Williams Petroleum Co. v. Midland Cooperatives, Inc.*, 539 F.2d 694, 697 (10th Cir.1976), and then applies this principle to argue that Haas' fee should be 25% (from the original retainer agreement) of 21.3334% of $375,000. This Court finds Figenschou's interpretation of the February 27 agreement to be, at best, contorted.

■ The memorandum agreement states, "If you elect to settle your case for the offered sum of $375,000.00, I will reduce my fee from 25% of that figure to 21.3334% of that figure." By the plain language of the agreement, the sole referent to which the 21.3334% refers is the $375,000.00. If the parties had contemplated a percentage of a percentage, the memorandum would have stated as much. The language of the contract was clear and the trial court properly interpreted the plain meaning of the terms. *See Premier Resources, Ltd. v. Northern Natural Gas Co.*, 616 F.2d 1171 (10th Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 92, 66 L.Ed.2d 31 (1980).

■ Next, Figenschou requests this Court to reverse the trial court's award of $13,708 to the liquidator for the Comavi Corporation. Figenschou's assertion that no evidence supports an award to the liquidator is contradicted by the testimony offered at the hearing. (Tr.Vol. VI, pp. 140–43.) Figenschou further claims that Haas violated DR 5–106(A) of the Code of Professional Responsibility by attempting to enforce the settlement agreement. Figenschou presents no evidence that the settlement which he approved was in any way coerced. Haas' motion to enforce the settlement was engendered by Figenschou's refusal to abide by the terms of the settlement agreement. Furthermore, by the time Haas moved for effectuation of the settlement, Figenschou was represented by the DeVilliers firm. The facts and the timing fairly dispel any notion that Haas had a conflict of interest. This court is reluctant to find a conflict of interest when any conflicts were of Figenschou's making. *See In re Dayco Corporation Derivative Securities Litigation*, 102 F.R.D. 624 (S.D. Ohio 1984).

■ Finally, Figenschou contests the trial court's order allowing Haas attorney fees as costs for defending his right to the $80,000. This Court is compelled to decide the issue according to Oklahoma state law. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Under Okla.Stat.Ann. tit. 12, § 936 (1981), a prevailing party is allowed a reasonable attorney fee as costs on the recovery of a contract for services. Figenschou contends that Haas was not a "prevailing party" because the lower court's ruling allowed Haas $80,000 as attorney fees.

In *Carter v. Rubrecht*, 108 P.2d 546 (Okla.1940), the Oklahoma Supreme Court held that a prevailing party is a party who won on the merits. *See also Wieland v. Danner Auto Supply, Inc.*, 695 P.2d 1332 (Okla.1984). In this case, the merits of the underlying litigation concerned Haas' right to attorney fees for representing Figenschou. Figenschou contested Haas' recov-

ery of the $80,000, and the court below construed the contract in favor of Haas. Therefore, Haas prevailed on the merits of the litigation. The trial court properly concluded that Haas was entitled to a reasonable fee for defending his right to the initial attorney fee. *See Hamilton v. Telex Corp.*, 625 P.2d 106 (Okla.1981) (attorneys who represent themselves may be entitled to attorney fees for such representation).

No reversible error has been demonstrated. Accordingly, the decision of the trial court is AFFIRMED.