**PANHANDLE EASTERN PIPELINE COMPANY; Northern Natural Gas Company, a division of Enron Corporation; ANR Pipeline Company; and Williams Natural Gas Company, Plaintiffs,**

v.

**CORPORATION COMMISSION OF the STATE OF OKLAHOMA, Bob Hopkins, Norma Eagleton, and James B. Townsend, Commissioners of the Corporation Commission of the State of Oklahoma, Defendants,**

**Oklahoma Independent Petroleum Association, a nonprofit corporation, Intervenor.**

**No. CIV–88–1733–W.**

United States District Court, W.D. Oklahoma.

June 13, 1989.

Kindanne Carole Jones, J. Clayton La Grone, William J. Skepnek, Laurie Anne Williams, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for plaintiffs.

Robert H. Henry, Atty. Gen., Robert A. Butkin, Rachel Lawrence, Asst. Attys. Gen., Oklahoma City, J. Warren Jackman, Bland Williamson, Dale Joseph Gilsinger, Pray, Walker, Kackman, Williamson & Murlar, Tulsa, for defendants.

## ORDER

LEE R. WEST, District Judge.

In the action before this Court, the Plaintiffs seek declaratory and permanent injunctive relief to enjoin the Defendants, Oklahoma Corporation Commission and its Commissioners, from invoking the notice and protest provisions of 52 O.S. § 87.2 for the purpose of conducting increased density proceedings. Plaintiffs are operators of natural gas pipelines and are purchasers under numerous gas contracts entered into with various producer-sellers in Oklahoma. Under the terms of such contracts, plaintiffs purchased natural gas produced from certain wells, most of which are located on drilling and spacing units created by the orders of the Oklahoma Corporation Commission under the authority of 52 O.S. §§ 87.1–87.2.

Title 52 O.S. § 87.2, the Oklahoma statute regarding notice and protest of spacing units, including increased density proceedings, sets out who is entitled to notice and opportunity to be heard at increased density proceedings. Title 52 O.S. § 87.2 provides that owners of the mineral estate, or owners of the right to drill a well for oil and gas on the lands, or owners of correlative rights within the common source of supply are the proper parties to receive notice and to protest the applications to establish additional wells in increased density proceedings. Under said statute, operators of natural gas pipelines do not receive notice and opportunity to be heard at such proceedings. The statute does provide that other persons may be granted leave to intervene in such a proceeding based upon clear and convincing evidence that such persons have substantial rights which may be adversely affected by the outcome of the proceedings.

■ The issue to be answered by this Court is whether the contracts held by the operators of the natural gas pipelines create a constitutionally protected property interest such that the Fourteenth Amendment attaches, requiring notice and opportunity to be heard at increased density proceedings. The Court answers in the negative.

■ Increased density proceedings are concerned with the determination of whether to permit the drilling of an additional producer well in a specific zone. The operators of the natural gas pipelines may be adversely affected by increased density proceedings if increased production results which obligates the purchaser to either "take-or-pay." Thus, the operators may suffer as a consequence a business loss, i.e., economic harm. Even in Fifth Amendment "taking" cases, consequential damages in the form of business losses and frustration or destruction of contracts resulting from lawful government action are not compensable. *Omnia Commercial Company, Inc. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923); *United States v. 677.50 Acres of Land in Marion County, Kansas,* 420 F.2d 1136 (10th Cir.1970); *J.A. Tobin Construction Co. v. United States,* 343 F.2d 422 (10th Cir.1965), *Stipe v. United States,* 337 F.2d 818 (10th Cir.1964).

For purposes of this action, the Court received two representative contracts. The plaintiffs point out that these contracts create rights-of-way for building and use of pipelines, right of ingress and egress necessary to carry out the terms of the contract, and the right to all gas produced except for minimal amounts reserved by the seller. Plaintiffs assert that these incidents to the contracts create a property right in the mineral estate itself. The Court does not agree.

■ Increased density proceedings involve the application for an additional well to a specific zone to increase production. Such a proceeding does not affect rights-of-way or ingress and egress rights of the operators of the pipelines. Further, the fact that the operators executed contracts

to purchase virtually all gas produced through take-or-pay provisions does not elevate the contracts to the stature of an interest in the mineral estate itself. In *United States v. 677.50 Acres in Marion County, Kansas, supra,* the Court for the Tenth Circuit refused to elevate a pipeline's division order contracts to an interest in the estate itself, notwithstanding the unique circumstances that the division order contracts were irrevocable for a period during which the mineral estate was condemned. *Id.* at 1136. Although the *677.50 Acres* case is a "taking" case, the analysis by the Court for the Tenth Circuit to determine if a contract creates an interest in a mineral estate is applicable. The Court for the Tenth Circuit further notes that the division order contracts were concerned with the oil *after* it was severed from the mineral estate, thus incapable of creating an interest in the mineral estate itself. *Id.* In the case at bar, the gas is acquired by the operators of the pipelines at the point of delivery *after* the gas is produced. Therefore, by similar analysis, the subject contracts do not create an interest in the mineral estate itself. Finally, the Court for the Tenth Circuit observed that the division order contracts did not permit the pipelines to compel production or sue for waste. *Id.* These indices of ownership are similarly missing in the case at bar.

The operators of the pipelines assert that valid contracts are property interests, citing *Lynch v. U.S.,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). The court in that case was concerned with the unilateral cancellation of insurance policies issued pursuant to the War Risk Insurance Act to World War I veterans. The court found that the "taking" of those contracts deprived the veterans of property without due process of law in violation of the Fifth Amendment. Said case is clearly distinguishable from the instant action at bar: the contracts in question have not been "taken," nor has the issue been raised before this Court. Even if the issue had been raised, the "taking" argument would fail because no actual taking has occurred; merely frustration of the subject contracts has occurred. *See United States v. 677.50 Acres of Land in Marion County, Kansas, supra.*

The operators of the pipelines also assert that the Oklahoma statutory definition of "waste" creates a constitutionally protected property interest by obligating the operators of the pipelines to prevent said "waste." While it is true that property interests may be created by independent sources such as state statutory law, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), this Court disagrees with the plaintiffs' analysis that increased production under the subject contracts creates waste. This specific issue was examined by the Oklahoma Supreme Court in *Golsen v. ONG Western, Inc.,* 756 P.2d 1209 (Okl.1988), where that court concluded that the take-or-pay purchase contracts were proof that a market existed for the producer, and therefore no waste occurred. This Court agrees. Therefore, the statutory definition of waste relied upon by the plaintiffs is inapplicable to this situation.

The operators of the pipelines also assert that the Federal Energy Regulatory Commission (FERC) prudence rule creates a property interest for the operators of the pipeline because said operators cannot pass along increased prices of gas to the consumer if it is found that the operator did not take prudent steps to reduce gas prices. In short, plaintiffs assert that failure to participate in the increased density proceedings would adversely affect their ability to come within compliance of FERC's prudence rule. This Court will not presume that FERC will deem the Oklahoma increased density proceedings as creating imprudent gas prices. Furthermore, nothing in the record indicates that FERC interprets the outcome of the increased density proceedings as violative of the FERC prudence rule. In fact, the operators of the pipelines acknowledge that they are unaware of a single case where FERC held that the operators of pipelines failed to satisfy the prudence standard based on the outcome of an increased density proceeding. *See* Plaintiff's Answer to Defen-

dants' Discovery Requests, Request No. 9, p. 5.

■ Finally, notwithstanding all the possible penumbra property rights that the operators of the pipelines assert arise from these purchase contracts, the express provisions of these contracts themselves repudiate any right or interest by the operators of the pipelines in the determination of whether to drill additional wells. The operators of the pipelines cannot claim a property interest to something which they never acquired.

The two representative contracts presented to this Court state in pertinent portions:

> The obligations of Seller hereunder are subject to the ability of Seller's wells to produce without waste and in accordance with prudent oil and gas field practice, and *the control and operation of Seller's lands and leaseholds producing gas to be sold to Buyer hereunder shall remain the exclusive right of Seller including without limitation the right to determine when, where, or whether to drill new wells,* to repair or rework old wells, and to abandon any well or surrender any lease when no longer deemed by Seller to be capable of producing gas in paying quantities under normal methods of operation. (Emphasis added.)

and

> Subject to the terms of this Agreement, *the control, management, and operation of the lands, leases, and wells located thereon and constituting the contract acreage, and the regulation of the flow of gas at the points of delivery shall be and remain the exclusive right of Seller, including but not limited to the drilling of any new wells,* and the repairing and reworking of oil wells; provided, however, Seller agrees to regulate within reasonable hours and limits of production the flow of gas to meet Buyer's fluctuating requirements. (Emphasis added.)

Because increased density proceedings are concerned with the determination of whether to permit drilling new wells, it must follow that the plaintiffs are asserting a property interest in that determination. Such an assertion belies the plain language of the contracts and will not stand. This Court cannot alter said contracts by interpreting that the operator of the pipelines acquired rights to participate in the determination to drill new wells. Courts cannot make a contract better or alter the terms of a contract when the parties have entered into it of their own violation. *Williams Petroleum Co. v. Midland Cooperatives, Inc.,* 539 F.2d 694 (10th Cir.1976).

■ Assuming *arguendo* that the operators of the pipelines acquired some general property right through these contracts, this Court finds that the express contractual provisions of these contracts nevertheless waive any specific rights in determinations to drill additional wells. Plaintiffs assert that they cannot waive their rights to notice and an opportunity to be heard. This Court disagrees. It has been held that sophisticated parties can waive procedural due process rights. *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). In the *Overmyer* case, the United States Supreme Court noted that there was no unequal bargaining power or contract of adhesion between the corporate parties and found that Overmyer voluntarily, intelligently, and knowingly waived rights to a prejudgment notice and hearing. In the instant action, the Court takes notice of the pipeline operators' sophistication and, because the record does not indicate otherwise, presumes that the express contractual provisions were voluntarily, intelligently, and knowingly entered into by the operators of the pipelines.

Therefore, this Court finds that the operators' repudiation of any rights to determinations to drill additional wells precludes the operators from acquiring any legally protected property interest in said determinations. Further, this Court finds that whatever general property rights may have arisen under the subject contracts, the express contractual provisions repudiating specific involvement in determinations to drill additional wells act as a waiver to notice and opportunity to be heard at any

**1060**

proceedings which involve the determinations to drill additional wells.

The plaintiffs' complaint seeking permanent injunctive relief is hereby DENIED.